**FILED**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

APR 1 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CHANDA ALSTON,                          ]
In her own right, and as next           ]
friend of her daughter, C.A.            ]
1911 Savannah Street, S.E.              ]
Washington, D.C. 20020                  ]
                                        ]
C.A., a minor,                          ]      Case: 1:07-cv-00682
By her mother and next friend,          ]      Assigned To : Urbina, Ricardo M.
Chanda Alston,                          ]      Assign. Date : 04/17/2007
1911 Savannah Street, S.E.              ]      Description: Alston v. District of Columbia, et al.,
Washington, D.C. 20020                  )
                                        ]      Civil Action No.___
                                        ]
                                        ]
                                        ]
        Plaintiffs,                     ]
                                        ]
                                        ]
                                        ]
           v.                           ]
                                        ]
DISTRICT OF COLUMBIA,                   ]
A municipal corporation,                ]
John A. Wilson Building                 ]
1350 Pennsylvania Ave., N.W.            ]
Washington, D.C. 20004,                 ]
                                        ]
CLIFFORD JANEY,                         ]
In his official capacity as,            ]
Superintendent,                         ]
District of Columbia Public Schools     ]
Ninth Floor                             ]
825 North Capitol Street, N.E.          ]
Washington, D.C.20002,                  ]
                                        ]
JUDITH SMITH,                           ]
In her personal capacity,               ]
        (as former Director             ]
Federal and Family Court Monitoring,    ]
Office of Special Education),           ]
Public Defender Service                 ]
633 Indiana Avenue, N.W.                ]

**RECEIVED**

MAR 2 2 2007

Washington, D.C. 20004

PAULA PERELMAN
In her personal capacity,
Director for Resolution
 and Settlement,
Office of Special Education
District of Columbia Public Schools,
Sixth Floor,
825 North Capitol Street, N.E.
Washington, D.C. 20002

DEBORAH COUNCIL,
In her personal capacity,
Dispute Resolution Specialist,
Office of Special Education
District of Columbia Public Schools,
Sixth Floor
825 North Capitol Street, N.E.
Washington, D.C. 20002

RUTH BLAKE,
In her personal capacity,
Director for Non-Public
Schools,
Office of Special Education
District of Columbia Public Schools
Sixth Floor
825 North Capitol Street, N.E.
Washington, D.C. 20002

MARY LEE PHELPS
In her personal capacity,
Consultant to the Assistant Superintendent,
Office of the Superintendent,
District of Columbia Public Schools
Ninth Floor
825 North Capitol Street, N.E.
Washington, D.C. 2000

BREONA HARRISON
In her personal capacity,
Office of Special Education
District of Columbia Public Schools

Sixth Floor
825 North Capitol Street, N.,E.
Washington, D.C. 20002

ERIKA GRAY
In her personal capacity,
Office of Special Education
District of Columbia Public Schools
Sixth Floor
825 North Capitol Street, N.E.
Washington, D.C. 20002

ARTHUR FIELDS
In his personal capacity
Office of Special Education
District of Columbia Public Schools
825 North Capitol Street, N.E.
Washington, D.C. 20002

        Defendants.
_____

### COMPLAINT
(Compensatory Education Relief, Declaratory and
Injunctive Relief, Compensatory and Punitive Damages
for Violations of, and of rights under the Americans
with Disabilities Act, Section 504 of the
Rehabilitation Act of 1973 and the D.C. Human Rights
Act, Reversal of an Impartial Hearing Officer's
Determination under the Individuals with Disabilities
Education Act, Violation of Due Process Rights under
the Individuals with Disabilities Education Act Relief,
and attorney's fees)

### PRELIMINARY STATEMENT

This civil action arises out of intentional actions taken by
Defendants to exclude Plaintiff C. A., solely on account of her disabilities,
from services and programs offered by DCPS through private residential,
educational institutions, and deny her the benefit of those services and
programs, in violation of Title II of the Americans with Disabilities Act

(ADA) and other laws designed to protect the rights of persons with disabilities.

The facts underlying this civil action share a common nexus with those underlying two actions for emergency Stay Put injunctive relief brought by Plaintiffs in September 2005 and again in May 2006 , pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §1415(j)(IDEA),in this Court. The Honorable Ricardo J. Urbina issued emergency Stay Put injunctive relief in both civil action 05-1875 (entered Sept. 26, 2005) and civil action 06-0836 (entered July 17, 2006). As further explained below, IDEA requires DCPS to maintain the then-current educational program/placement of a student with disabilities, during the pendency of any Due Process Hearing or any appeal thereof to this Court.

### A. Claims under the ADA, Section 504 and State Law

Plaintiffs assert claims pursuant to Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134, Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794, and the D.C. Human Rights Act (HRA), D.C. Code §§ 2-1401.01 et seq.,  arising out of intentional conduct of the Defendants which excluded C.A., because of her disabilities, from residential educational services and programs offered by DCPS and denied her the benefits of those programs and services on account of her disabilities.

The ADA, 42 U.S.C. §§ 12131, 12132, mandates that
 "no qualified individual with an individual shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities "offered by a public entity. Plaintiffs bring their ADA claim directly under the ADA, as well as pursuant to Section 1983.

4

Section 504 requires that " no otherwise qualified individual with a disability....shall, solely by reason of her or his disability, be excluded from participation in , be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....." 29 U.S.C. § 794(a). Plaintiffs bring their Section 504 claims directly under Section 504, as well as pursuant to Section 1983.

The HRA prohibits any educational institution and any agency or office of D.C. government, from limiting or refusing to provide any service, program of benefit to any individual on the basis of that individual's disability, and prohibits anyone from aiding, abetting, inviting, or compelling such action. D.C. Code §§ 2-1402.41, 2-1402.73, 2-1402.62.

### B. Claims under IDEA

IDEA obligates the D.C. Public School System ("DCPS") to provide disabled students with a "free appropriate public education," which is based upon an Individualized Education Program ("IEP") that has been developed in accordance with 20 U.S.C. § 1414. It recognizes that children have disabilities of varying severity, and requires that DCPS make available a continuum of program/placements that range from placements in the regular education classroom—for children with less severe disabilities—to placements in residential institutions or hospitals—for children with the most severe. 20 U.S.C. § 1410(29), 1412(a) (5) It requires DCPS to make an educational placement of that student, based on his or her IEP in an appropriate program/ school. 20 U.S.C. §§ 1401(15), 1414(c); 34 C.F.R. 300.551-300.554. IDEA sets forth a detailed schema of "due process "rights for the student and parents. 20

U.S.C. § 1415. These include a right to an administrative "due process" hearing, to which a parent Can bring any dispute over a child's education; a requirement that pending that hearing or any judicial proceeding, a child remain in his or her "then current Educational placement," also referred to as the child's "Stay Put" placement, 20 U.S.C. § Section 1415(j); and a right to appeal the administrative determination taken at the Due Process Hearing to the federal district courts.

Plaintiffs' May 2006 action for emergency Stay Put relief was predicated on a Due Process Complaint filed with the DCPS Student Hearing Office on May 5, 2006. Hearings, on the Due Process Complaint were convened on July 21, 2006 and January 8, 2007. On January 18, 2007, a DCPS Impartial Hearing Officer entered a Hearing Officer's Determination denying Plaintiffs relief. Plaintiffs here appeal the Hearing Officer's Order, seeking reversal of that Order. Plaintiffs, in addition, here assert IDEA claims against DCPS for other violations of IDEA due process rights. Plaintiffs request compensatory education services and declaratory relief.

## JURISDICTION

This Court has jurisdiction, pursuant to 20 U.S.C. § 1415(i)(3), 20 U.S.C. 1415(j), 42 U.S.C.§ 1983, 28 U.S.C. §§ 2201, 2202,1331, 1333 and 1343, over Plaintiffs' IDEA claims and their appeal of the Impartial Hearing Officer's Determination before the DCPS Student Hearing Office This Court has jurisdiction over those of Plaintiffs' claims brought under

the ADA and Section 504 of the Rehabilitation Act of 1973, pursuant to

42 U.S.C. § 12133, 29 U.S.C § 794a (a)(2), 28 U.S.C. §§ 12201,

2202,1331, 1333, 1343 and 1983. Jurisdiction over Plaintiffs' D.C.

Human Rights Act claims is conferred by D.C. Code . § 2-1403.16 and by

28 U.S.C.  § 1367. Venue lies in the District of Columbia pursuant to 28

U.S.C. §1391.

## PARTIES

1. Plaintiff C.A. is a fourteen-year old resident of the District of

Columbia, who was determined by DCPS to have disabilities that prevent

her from learning unless she is provided with specialized instruction,

related services and other accommodations.  Her primary disabilities,

severe emotional disturbance and moderate mental retardation,

substantially limits her ability to perform a major life activity, that of

learning. She, therefore, is an individual with a disability under the ADA,

42 U.S.C. § 12102, Section 504, 29 U.S.C. § 705(20), and the D.C.

Human Rights Act, D.C. Code . § 2-1401.02(5A).  At all times pertinent to

this action, DCPS IEP Teams and Impartial Hearing Officers found—in

conformity with  procedures required by IDEA--- that  C.A. required  an

educational program / accommodations consisting, *inter alia,* of a day

program placement at Cabin John MS and a residential placement at

Grafton School's Rockville Campus in order to learn. This action is
brought on her behalf by her mother, Ms. Chanda Alston.

2. Plaintiff Chanda Alston is a resident of the District of Columbia
and is the mother of C.A. She brings this action on her own behalf and
on behalf of her daughter.

3. Defendant District of Columbia ["DC"] is a municipal corporation
responsible for ensuring that those DC agencies that receive federal
funds comply with their obligations under District and federal law,
including IDEA, the ADA, Section 504 of the Rehabilitation Act, the
District of Columbia Human Rights Act and their implementing
regulations.

4. Defendant Clifford Janey is Superintendent of DCPS, a public
educational institution and entity of the District of Columbia
government, which receives Federal educational and other funds,
including funding under IDEA. DCPS provides educational services,
activities and programs both directly, through its own public schools and
public charter schools, and indirectly, through private day schools and
private residential schools. As superintendent Defendant Janey is
responsible for implementing policies, plans and procedures that
conform with the requirements of Federal and DC Law, including IDEA,

Section 504, the ADA, and the District of Columbia Human Rights Act. He is sued in his official Capacity.

5. Defendant Judith Smith is an attorney who practiced and lectured in special education law before she joined DCPS. Since 2001, she held managerial positions within the "Compliance Office", a unit within the Office of Special Education of DCPS. In 2002, while Director of Policy and Planning, Defendant Smith was sued in an action alleging that DCPS had violated students Stay Put rights. In August 2003, when Defendant Smith was Director of Mediation and Compliance, she was suspended for a six-week period, as part of an investigation into the violation by her office of a student's IDEA rights. On information and belief, during that period Defendant Paula Perelman was her immediate supervisor. Since on or about 2004, Defendant Smith was Director of Federal and Family Court Monitoring for the office of Mediation and Compliance, in which capacity she provided instructions to DCPS legal counsel and  Special Education Office personnel, and provided DC counsel with evidence to be presented before the courts. Ms. Smith has been personally involved in the 2005-2006 court cases brought by Ms. Alston, in many capacities, including submitting declarations and other evidence, supervising or deciding on placement matters, and participating in Court conferences. Since the events and actions

described in this Complaint, Defendant Smith has left the employ of DCPS. She is sued in her personal Capacity.

6. Defendant Paula Perelman is an attorney who has been employed by DCPS since 1985 in a variety of policy and compliance capacities. From 1999 forward, with brief exception, she has been the head of the office of mediation and compliance within the DCPS Office of Special Education. Her current title is Director for Resolution and Settlement in the Office of Special Education. Among her duties and responsibilities are determining what staff will be assigned to prepare DCPS' defense to due process complaints, what evidence they will present, what positions DCPS will take in dispute resolution meetings under IDEA, whether DCPS will offer to settle a due process complaint or a court Case and , if so, on what terms it will do so. Ms. Perelman has been personally involved in making decisions concerning the placements and accommodations that DCPS will offer C.A. and in the due process hearings and court Cases that Ms. Alston brought in 2005-2006.  She is sued in her personal capacity.

7. Defendant Deborah Council is currently a Dispute Resolution Specialist in the DCPS Office of Special Education, and was until recently Special Education Office liaison with Grafton School's Rockville Campus and with Cabin John MS. In both Capacities Defendant Council has been

personally involved in decisions concerning C.A.'s placement since on or about 2004 and has testified at administrative hearings and sworn declarations in Plaintiffs' Cases.  She is sued in her personal capacity.

8. Defendant Erika Gray is a Placement Specialist in the DCPS Office of Special Education. She has been personally involved in decisions and actions concerning C.A.'s placement in 2006, regarding which she has reported to Defendant Smith, among others. She is sued in her personal capacity.

9. Defendant Ruth Blake is the director for non- public school placements in the DCPS Office of Special Education. Ms. Blake has held that position throughout the period that C.A. has been placed in private special education schools, and has been personally involved in deciding issues concerning C.A.'s placement on many occasions. On information and belief she has supervised Defendants Council, Harrison and Gray. Defendant Blake has been personally involved in the events described in this Complaint. She is sued in her personal Capacity.

10. Defendant Breona Harrison is on the staff of the DCPS Office of Special Education, where she has served in many, overlapping capacities. She has been personally involved in the events described in this Complaint, and is sued in her personal Capacity.

11. Defendant Mary Lee Phelps is now a consultant to DCPS

11

Assistant Superintendent Gayle Amos who currently supervises the
Special Education Office.  Until on or about May 2006, Defendant Phelps
held the titles of acting Director of the Office of  Special Education and
interim or acting assistant Superintendent for Special Education.  On
information and belief, at that time Defendant Phelps had direct
supervisory responsibility over Defendants Smith, Perelman and Blake.
On information and belief, Defendant Phelps retained the title of acting
Director of the Office of Special Education until on or about August
2006. She is sued in her personal capacity.

12. On information and belief all the individual Defendants are
subject to D.C. Code 2-1402.67, which requires, *inter alia*, that all
permits, licenses, benefits, or advantages issued by, or on behalf of, the
government of the District of Columbia shall specifically require and be
conditioned on compliance with the D.C. Human Rights Act.

**FACTS**

**C.A. Is an Individual with Disabilities Who Requires Educational
Services and Accommodations That Are Provided by DCPS Indirectly
through Specialized Private Educational Institutions**

13. C.A. is a "child with a disability", within the meaning of IDEA;
is a "qualified individual with a disability", within the meaning of Title II
of the ADA; an "otherwise qualified individual with a disability" within
the meaning of Section 504, and a "person" with a "disability" within the

meaning of the D. C. Human Rights Act.

14. In 1998, DCPS determined that C.A. is a child with a disability and can not learn unless she is provided specialized instruction, related services and other accommodations. Because of her disabilities, C.A. requires the specialized instruction, related services, and other accommodations that are identified on an IEP that has been developed pursuant to IDEA's mandates if she is to learn.

15.  DCPS offers specialized instruction, related services and other accommodations to children with disabilities who could not learn without them. DCPS offers these services or programs both directly--- through programs at its own public schools, and --- in the case of children with more severe disabilities--- indirectly through private schools which DCPS pays to provide the educational programming required by each child's IEP.

16. From 1998 forward, DCPS Impartial Hearing Officers and DCPS IEP Teams determined that C.A.'s disabilities were sufficiently severe that she required services and programs that were to be provided by DCPS indirectly through specialized private schools.

**Defendants Have Attempted to Exclude C.A. from, or Deny C.A. The Benefit of, DCPS' Program of Indirect Services Since 2001**

17. C.A. has not received specialized instruction in a DCPS public school

since 1998, when it was determined, following evaluations of C.A., that on account of the severity of her disabilities, C.A. required specialized instruction and other accommodations in a program for children with disabilities at the Kennedy-Krieger School in Baltimore.

18. In September 2001 a DCPS Impartial Hearing Officer held that C.A.'s disabilities were such that she could no longer learn in a private day program, and that she required specialized instruction and other accommodations provided in a residential educational program in order to learn. Since that date, every DCPS IEP Team and Hearing Officer has found that C.A. requires services and programs offered by DCPS indirectly through private residential institutions.

19. Since 2001 forward, Defendants have acted extra-legally to deny C.A. the benefits of, or exclude her from, the programs that DCPS offers through these private schools: at no time have they complied voluntarily with the decisions of DCPS IEP Teams or DCPS Impartial Hearing Officers. They have so acted despite findings of a psychiatric evaluation of C.A., performed at the Order of a DCPS Impartial Hearing Officer, which found that, C.A.:

> a) has little ability to screen out or modulate aggressive thoughts, and feels easily threatened;
>
> b) is prone to disorganized thinking under the pressure of strong feelings, experiencing of blurred boundaries between people, and misinterpreting social interactions;

c) suffers cognitive slippage which directly impedes her

ability to learn;

d) requires intensive services in a highly structured

residential placement in order to learn; and

e) is at risk for increasingly severe problematic

behavior, including self-injury and aggression to peers and

family if she does not receive those services.

20. Following court action initiated by Plaintiffs in 2002, a DCPS IEP

Team concurred that C.A. could not learn unless she was educated in a

residential facility, which could provide her a consistent and highly

structured educational program 24 hours daily. The IEP Team developed

an IEP, in accordance with which C.A. was placed at the Grafton School,

a residential placement for children with developmental and emotional

disabilities in Rockville, MD in 2002.

21. In Spring 2003, C.A.'s Grafton/DCPS IEP Team decided that

C.A. needed both a residential placement at Grafton and a day

instructional program at Cabin John MS, in a "School/Community

Based" special education program in the Montgomery County Public

School System in order to benefit from her public education.

**In 2003 Defendants' Supervisee Lied and Fabricated
Documents in Order to Exclude C.A. from, and Deny Her the
Benefits, of DCPS' Program of Indirect Services**

22. Although DCPS approved the Spring 2003 IEP, Defendant Blake, acting alone or in consultation with Defendants Smith and Perelman, did not submit to the Montgomery County Public School System the payment authorizations that were required for C.A. to register at the Cabin John program. When Ms. Alston and the Grafton IEP Team pursued the matter of payment, Defendants--—in violation of IDEA and of her IEP--- issued a notice of placement, changing her disability classification, and placing her in a D.C. public school program for the mentally retarded at Kramer MS.

23. On August 22, 2003, an impartial hearing officer upheld the Grafton IEP Team's determination and ordered DCPS to fund C.A.'s placement both at Grafton and at Cabin John. In his Order, the impartial hearing officer found that the DCPS Special Education Office Liaison/Specialist (SES) assigned by Defendants to Grafton School had lied and had fabricated documents that Defendants had submitted into evidence to the Due Process Hearing. The SES, who on information and belief, was supervised by Defendants Perelman, Smith and Blake was not dismissed for that misconduct.

**From 2003 through 2005 Defendant Blake, among Others Denied C.A. the Benefits of Services Offered Indirectly by DCPS**

24. Following the 2003 Due Process Hearing, DCPS informed Grafton staff that it would submit the requisite payment and other

authorizations to the Montgomery County Public School System so that C.A. could register at Cabin John. Grafton staff repeatedly communicated with Defendants in the expectation that Defendants would issue the required payments and documents as promised. Defendants did not do so until Spring Semester 2005. As a result, C.A. lost approximately two years of instruction in the Cabin John MS program that her IEP had identified as necessary for her to learn.

25. During that period, Grafton staff communicated directly with Defendants Blake and Council, and others under the supervision of Defendant Blake, in their attempts to obtain payment authorizations and forms for her Cabin John tuition.

### In 2005 Defendants Again Excluded C.A. from, or Denied Her the Benefits, of DCPS Programs

26. In Summer 2005, Grafton staff learned that Defendants had not submitted the payment and other authorizations required by the Montgomery County Public School System in order for C.A. to register at Cabin John for the 2005-2006 school year.

27. Grafton staff requested the necessary authorizations from DCPS, specifically from Defendants Council and Blake, without result. As a consequence C.A. was not able to register for Cabin John at the beginning of the 2005-2006 school year.

28. Mrs. Alston filed a due process complaint on September 13, 2005 with the DCPS Student Hearing Office, asserting her Stay Put right to maintain C.A. at Cabin John and Grafton both pursuant to the August 2003 Hearing Officer's Determination and pursuant to 20 U.S.C. §1415(j).

29. Thereafter, Mrs. Alston filed a Complaint in this Court, seeking, inter alia, Stay Put Injunctive Relief. Defendants Smith and Council were personally involved in that 2005 Court action.

30. This Court ordered Stay Put relief on September 26, 2005, ordering DCPS to forthwith fund C.A.'s placement at Cabin John MS. In its September 2005 Orders, this Court expressly held that C.A.'s current DCPS placement and program was the 2005-2006 school year IEP, which called for a dual program/placement consisting of a day program at the Cabin John MS special education program for mentally retarded students and a residential program at the Grafton School's Rockville Campus.

31. Less than a month later Defendant Council appeared personally at the DCPS Due Process Hearing convened to resolve Ms. Alston's administrative complaint. Ms. Council, notwithstanding, inter alia, (i) the findings of fact and conclusions of law made in this Court's September Stay Put Order, (ii) the August 2003 Hearing Officer's

Determination, and, (iii) the decisions of all of C.A.'s IEP Teams from 2002 forward, averred that C.A. had no IDEA placement at either Grafton or Cabin John, and that DCPS had no obligation to fund services provided her there.

32. On information and belief, Defendant Council appeared before the Due Process Hearing on the instruction and under the supervision of Defendants Blake, Perelman and Smith.

33. The Impartial Hearing Officer who heard Plaintiffs' administrative complaint issued his Hearing Officer's Determination on November 22, 2005. He held that C.A.'s IEP required a dual placement at Cabin John MS and Grafton, which DCPS had denied her, and ordered, inter alia, compensatory relief.

## Defendants Excluded C.A. from, and Denied Her the Benefits of, DCPS Services in 2006

34. IDEA mandates that DCPS monitor students that it places in programs outside the DC Public School System and imposes responsibility on DCPS for the implementation, review and revision of the IEP of any student placed outside the DC school system.

35. In December 2005, Grafton School announced that it would close the Rockville campus attended by C.A. Information concerning

Grafton's closing was provided DCPS by Grafton staff and was widely
publicized in local newspapers. Following that announcement,
Defendants Council and Blake neither sought nor obtained a substitute
residential placement for C.A.

36. As predicted by the 2001 psychiatric evaluation of C.A., C.A.
began in December and January to show symptoms of psychological
distress and of emotional regression. These symptoms were discussed by
Grafton and Cabin John staff that comprised her DCPS IEP Team.

37. On or about February 9, 2006 Grafton staff realized that C.A.
was hallucinating. C.A. was taken to a psychiatrist who found that C.A.
had suffered a psychotic break. C.A.'s Grafton School psychologist
reported to Cabin John MS staff the findings of that psychiatrist and
informed Cabin John staff that she concurred in that diagnosis.

38. On or about February 18, 2006, Grafton closed its Rockville
campus. After that date Defendants determined that they would not
locate a substitute residential placement for C.A., and determined that
Defendants Blake and Council would not respond to requests for
information concerning a substitute residential placement for C.A.

39. Denied the residential structure that psychological and
psychiatric evaluators had found that C.A. required, C.A.'s condition
deteriorated. In March 2006 C.A. was hospitalized in the psychiatric

ward of Children's Hospital which diagnosed her, on in-take, as
schizophrenic. Cabin John MS staff were apprised of her hospitalization
and diagnosis.

40. On March 23, 2006, C.A.'s IEP Team met at Cabin John MS to
conduct the annual review of C.A.'s IEP that is mandated by IDEA. Her
IEP Team concluded, after review of her current emotional condition, that
it was unable to prepare a plan for either updating C.A.'s evaluations or
for revising her IEP because of C.A.'s psychiatric state. The IEP Team
prepared extensive notes on the hallucinations that Cabin John staff had
observed, on hallucinations that C.A. reported in conversations with
Cabin John staff, on the general deterioration of C.A.'s emotional
condition, on her increased aggressiveness, and her need for immediate
residential placement at a facility that could address her psychiatric
needs. These notes formed part of C.A.' official IEP records, review of
which formed part of the on-going responsibilities of Defendants Blake
and Council.

41. Defendants still made no residential placement for C.A. On
May 5, 2006, Mrs. Alston filed a Due Process Complaint with the DCPS
Student Hearing Office. Mrs. Alston's Complaint alleged that DCPS had
violated IDEA by failing to provide C.A. with a Free Appropriate Public
Education, by failing to provide her with the placement Called for by her

IEP, and by changing her placement without complying with the substantive and procedural requirements of IDEA. Mrs. Alston asserted her daughter's Stay-Put right in her Complaint.

42.  Defendants determined on and after May 5, 2006 that they would deny C.A. a Stay Put placement, and so did not then seek or locate a residential placement as a Stay Put placement for C.A. Defendants Perelman, Council and Fields then took the following actions which excluded C.A. from participation in or denied her the benefits of DCPS services and programs:

(a)  On May 26, 2006 and June 8, 2006 DCPS convened dispute resolution meetings (DRMs), pursuant to Section 1415 of IDEA, to determine what placement Defendants would offer C.A. in settlement of her Due Process Complaint.  Defendant Perelman participated in both DRM sessions. Defendants Council and Fields participated in the June DRM.

(b) After reviewing  C.A.'s special education records, including the Meeting Notes created by the March 23, 2006 IEP Team which described in detail C.A.'s deteriorating condition, her psychiatric hospitalization and hallucinations, as well as reviewing Plaintiffs' pleadings in this Court, and hearing the views of the DCPS/Cabin John IEP Team who attended the June 8, 2006 DRM and forcefully

stated the IEP Team's conclusion that C.A. required immediate residential placement, Defendants Perelman, Council and denied C.A. a residential services in substitution for those provided theretofore by Grafton.

(c) On June 8, 2006, Defendants Perelman, Council and Fields offered C.A. a day program placement for the mentally retarded at Kramer MS, the very same DCPS day program which:

(i) was held by a DCPS Impartial Hearing Officer in August 2003 to be inadequate for C.A's disabilities;

(ii) was not capable of providing services for a child with a severe emotional disability who had been found repeatedly to require residential services, much less for a child who was actively psychotic; and

(iii) was defended at the August 2003 Due Process Hearing by a Special Education Office SES who, the August 2003 Hearing Officer's Determination held, had fabricated evidence and lied concerning the views and actions of C.A.'s IEP Team in order to justify Defendants' issuance of the notice of C.A.'s placement at Kramer MS.

43. While the DRM meetings were being planned and taking place, Defendant Smith coordinated Defendants' strategy, before this Court, to

exclude C.A. from participation in, or deny her the benefits of, DCPS programs and services.

(a) On information and belief Defendants Perelman and Smith determined that Defendant Council would swear a declaration under oath, that Grafton School was not C.A.'s educational placement pursuant to IDEA.

(b) On information and belief, Defendants Smith or Perelman drafted or reviewed Defendant Council's declaration and Defendant Smith transmitted that Declaration to the Office of the Attorney General for submission in this Court in support of DCPS' Opposition to Plaintiff's motion for a Stay Put placement, filed May 24, 2006.

(c) Defendants Perelman and Smith knew or should have known that the statements made in Defendant Council's declaration were without factual or legal basis, that they contradicted statements made by Council herself on prior occasions, statements made by other DCPS representatives in the 2005 action before this Court, and conflicted directly with findings of fact and conclusions of law and Orders of Due Process Hearing Officers and Courts from 2001 forward, during which time-span Defendants Smith and Perelman

were responsible for decisions regarding DCPS' response to Plaintiffs' due process complaints and court actions.

44. On July 17, 2006, this Court issued its memorandum opinion and Order, granting Plaintiffs' motion for a Stay Put placement. The Court ordered Defendants to issue referrals to residential placement facilities by July 24, 2006, to submit those to the Court by July 27, 2006, and to have C.A. admitted to a residential facility by August 7, 2006.

45. From July forward, Defendants' actions ensured that C.A. was denied the benefit of residential services. Defendants Smith, Gray, Harrison, Blake, and others decided to take, among other actions, the following steps which deprived C.A. of a residential program and services:

a) Defendants delayed issuance of residential referral packages;

b) Defendants issued referrals that contained erroneous information concerning C.A., her age and her disabilities;

c) Defendants issued referrals to only a handful of schools, although they knew or should have known    that most school would already have filled all slots for that school year and the next, and knew that this Court had ordered them to have C.A. admitted to a residential placement by August 7, 2006;

d) Defendants failed to include in their referral

  packages copies of educational and disability evaluation reports,

  in the absence of which no residential facility could process a

  referral for C.A.'s admission;

e) Defendants failed to respond to requests from

  schools to which they had issued referrals for copies of evaluation

  reports, although C.A.'s DCPS educational records contained such

  evaluation reports;

f) Defendants failed to prepare materials and forms required by the

  Interstate Compact on the Placement of Children ("ICPC"), in the

  event that any of the schools to which they had referred C.A.

  admitted her;

g) When, on October 23, 2006, Defendants were notified that --- as

  a result of efforts made by Ms. Alston--- The Woods residential

  facility in Pennsylvania would accept C.A. for admission upon

  confirmation that DCPS accepted financial responsibility for C.A.'s

  placement at Woods, Defendants did not respond to The Woods'

  request for confirmation;

h) Defendants did not, on October 23, 2006, begin the process of

  obtaining approval of her placement there from Pennsylvania ICPC

  authorities as required by the Interstate Compact on the Placement

of Children;

h) When Pennsylvania ICPC authorities approved the ICPC request

prepared, in default of DCPS action, largely by Ms. Alston,

Defendants did not notify The Woods or Ms. Alston;

i) When Ms. Alston requested that Defendants arrange for C.A.'s

transportation to The Woods, Defendants declined to do so.

46. Defendant Phelps knew or should have known that:

a) Impartial Hearing Officers in 2001, 2003, and

2005 held that C.A. required residential services;

b) Impartial Hearing Officers in 2003 and 2005 upheld C.A.'s

Grafton/Cabin John IEP and placement;

c) That this Court held in September 2005 that C.A.'s IDEA

placement was the combined Grafton/Cabin John IEP and

placement;

d) That in September 2005 and July 2006 this Court issued

injunctive relief ordering DCPS to maintain that placement;

e) That the violations of law found in those proceedings could

not have occurred but for the conduct of Defendants Smith,

Perelman and Blake;

f) That Defendant Smith had been suspended and

investigated for violations of IDEA requirements in 2003; and

g) That Defendants Smith, Perelman and Blake would again exclude C.A. from DCPS services and programs or deny her the benefits of those programs, absent Defendant Phelps' intervention.

47. Defendant Phelps did not act to prevent her co-Defendants from excluding C.A. from participation in those services or denying C.A. the benefits of those services.

48. Defendants simultaneously took steps that resulted in the exclusion of C.A. from her Cabin John day-program placement.

(a) In August 2006 Defendant Gray referred C.A. for placement at Brown EC, a DPCS public day program.

(b) Defendants Blake and Smith then failed to prepare and forward to Montgomery County Public Schools the letters, forms and funding authorizations required by that school system in order for C.A. to register at Cabin John MS for the 2006-2007 school year.

49. Because of Defendants' actions, C.A. was left without any portion of her IEP program and placement, or of her Stay Put placement, when the school year commenced in August 2006, and was, as a consequence, deprived entirely of all services and programs that she required.

50. C.A. required the residential and day-program

services that were delineated in her DCPS IEPs because of the severity of her disabilities and the extent to which they limited her ability to learn.

51. Defendants acted to exclude her from those programs solely because of the extent and severity of her disabilities; they excluded C.A. from participation in the services that she required and the benefit of the programs to which she was entitled, on account of her disability.

### Appeal of Hearing Officer's Determination

52. The Due Process Complaint that Plaintiffs filed with the DCPS Student Hearing Office on May 5, 2006 sought (a) a Stay Put placement, (b) an appropriate, permanent residential placement, and (c) an award of compensatory education. That Complaint was heard by a DCPS Impartial Hearing Officer on July 21, 2006 and January 8, 2007. The Impartial Hearing Officer entered his Hearing Officer's Determination on January 18, 2007, denying Plaintiffs all relief.

53. The Hearing Officer erred, applied inappropriate legal standards, applied legal standards that were not consistent with IDEA, mischaracterized the law, and failed properly to assess the facts and evidence, when he:

(a)     Held, at the July Hearing, that he was without authority to hear Plaintiffs' claim for an appropriate

29

placement on the grounds that it was mooted by
this Court's Order of Stay Put Injunctive relief;

(b)    Held, at the July Hearing, that this Court's Order of
Stay Put Injunctive Relief granted Plaintiffs all
relief that he might otherwise have offered;

(c)    Held, at the July Hearing, that he could not
determine Plaintiffs' claim for compensatory
education relief until C.A. were placed in a
residential placement;

(d)    Held, at the July Hearing, that he required the
testimony of C.A.'s future residential placement
staff in order to determine what compensatory relief
was appropriate;

(e)    Ordered, at the July Hearing, that the Hearing be
continued until after C.A. was placed in a
residential placement;

(f)    Held, at the July Hearing, that he did not have
jurisdiction or authority to order interim
educational services for C.A.;

(g)    Found, at the July and January Hearings, that
DCPS had failed to implement C.A.'s IEP and had

denied her services required by her IEP from

February 2006 through November 28, 2006, but

held in his Hearing Officer's Determination that

DCPS had not denied C.A. a free appropriate public

education;

(h)     Held that Plaintiffs had failed to show  that

extended eligibility for special Educational services

constituted appropriate compensatory relief; and

(i)      Failed to consider or rule upon Plaintiffs' motion

for sanctions.

54. The Hearing Officer's Determination denied Plaintiffs their Due

Process rights under IDEA. Plaintiffs are aggrieved by the Hearing

Officer's Determination.

## DCPS Denied Plaintiffs Their Due Process Rights
## In Connection with the IDEA Administrative Process

55. DCPS filed an Answer to Plaintiffs' Due Process Complaint, in

the Student Hearing Office, that DCPS knew was without basis in fact or

law.

56.  DCPS, knowing that the grounds for its motion were false,

moved to dismiss Plaintiffs' Due Process Complaint on the grounds that

Plaintiffs ' Complaint was mooted by this Court's issuance of Stay Put injunctive relief.

57. DCPS appointed to hear Plaintiffs' Complaint a Hearing Officer who did not meet the standards stated by IDEA.

58. DCPS denied Plaintiffs their due process rights under 20 U.S.C. § 1415.

## PLAINTIFFS' INJURIES

58. Defendants' intentional conduct excluded C.A. from, and denied her the benefits of, educational services and programs offered by DCPS solely on account of the severity and extent of her disabilities. As a direct, and foreseeable, consequence of Defendants' actions, C.A. suffered severe emotional harm and distress, which required hospitalization in the psychiatric ward of Children's Hospital, medication and treatment and resulted in expenses therefore.

59. C.A.'s distress took the form of a psychotic breakdown, characterized by a wide range of terrifying hallucinations, which she suffered at all times of the day and night, in the classroom and at home. These included hallucinations that left her in fear of eating, which she, as a result, refused to do, putting her health at risk. She became aggressive and destructive, causing her brother significant injury and potentially permanent disfiguration and damaging or destroying walls and furnishings in her own home and in the home of her caretaker.

60. As a direct and foreseeable consequence of Defendant's intentional conduct, Ms. Alston has suffered emotional distress, anxiety, exhaustion and worry, which, at times, prevented her from working, and has exacerbated the symptoms of the asthma from which she suffers.

61. As a direct and foreseeable consequence of Defendants' intentional conduct, Ms. Alston has been forced to stay home from work in order to care for C.A. when she has been unable to locate suitable care for C.A., and has had to pay child care expenses when Ms. Alston has been able to obtain day care for C.A.

62. As a direct and foreseeable consequence of Defendants' intentional conduct C.A. has suffered repeated prolonged deprivations of educational programming, services and accommodations that have had a cumulative impact, over many years, on her learning , and have resulted in continued, on-going academic regression.

63. As a direct and proximate consequence of Defendant's intentional conduct and of their deliberate, repeated violations of Plaintiffs' rights to services and benefits under Section 504 of the Rehabilitation Act, of the ADA and of the D.C. Human Rights Act, Ms. Alston has incurred attorney's fees and expenses necessary to prevent further or additional damage to her daughter and to herself.

64. Unless Defendants are enjoined from further violations of

Plaintiffs' rights they will continue to violate those rights and to cause Plaintiffs injury.

## FIRST CAUSE OF ACTION

## Deprivation of Plaintiffs' IDEA Rights in Violation of Section 1983

64b. Plaintiffs incorporate and re-allege Paragraphs 1-64.

65. Defendants, acting under color of state law, deprived Plaintiffs of their Due process rights under 20 U.S.C. § § 1415(f)(1)(A), 1415(c) (2) (B), and 1415 (b)(6), when (1) Defendants filed an Answer to Plaintiffs Due Process Complaint that had no basis in fact or law and met none of IDEA's due process requirements and (2) when Defendants moved to dismiss Plaintiffs' Due Process Complaint on grounds that Defendant knew or should have known to be false, thereby depriving them of a due process hearing on all claims in their Complaint.

66. Defendants, acting under color of state law, deprived Plaintiffs of their Due Process rights under 42 U.S.C. §. § 1415 (f)(1)(A), 1415(f)(3)(A)(ii) and 1415 (b )(6) and  when they appointed a hearing officer who was not knowledgeable about IDEA to hear Plaintiffs' Due Process Complaint.

67. Defendants, in taking the fore-going actions, violated 42 U.S.C. § 1983.

34

benefit from DCPS educational services, failed to act upon that likelihood, intentionally discriminating against C.A.

76. Defendants violated 42 U.S.C. §§ 12131, 12132, and their implementing regulations.

### FOURTH CAUSE OF ACTION
### Deprivation of ADA Rights in Violation of Section 1983

77. Plaintiffs incorporate and re-allege Paragraphs 1-76.

78. DCPS offers, and is required by law to offer, educational programs and services for individuals with disabilities, as well as for individuals who are not disabled.

79. C.A. is a qualified individual with a disability, under 42 U.S.C. §12102, and therefore has a right, under 42 U.S.C. §§ 12131, 12132 to be free from exclusion from, or denial of the benefits of, those DCPS services and programs by reason of her disability.

80. The individual Defendants sued in their personal capacity intentionally excluded her from participation in, and denied her the benefits of, DCPS services and programs solely on account of her disability, in willful violation of her ADA rights.

81. Defendant Phelps knew that there was a substantial risk of injury to C.A.'s right to participate in, and benefit from, DCPS educational programs, and failed to act to prevent that harm.

82. These Defendants, acting under color of state law, denied her of the rights granted C.A. by 42 U.S.C. §§ 12131, 12132, in violation of 42 U.S.C.§1983.

## FIFTH CAUSE OF ACTION
### Violation of Section 504

83. Plaintiffs incorporate and re-allege Paragraphs 1-82

84. C.A. is a qualified individual with a disability under 29 U.S.C. . § 705(20), qualified to participate in educational services and programs offered by D.C.P.S.

85. Defendants intentionally excluded C.A. from participating in and denied her the benefits of DCPS educational programs and services, solely because of her disability, in willful violation of her Section 504 rights.

86. Defendants violated 29 U.S.C. § 794(a).

## SIXTH CAUSE OF ACTION
### Violation of D.C. Human Rights Act Prohibition of Discrimination by An Educational Institution

87. Plaintiffs incorporate and re-allege Paragraphs 1-86.

88. C.A. is a person with a disability, who is qualified to participate in DCPS services, programs , and benefits.

89. DCPS is an educational institution.

90. Defendants intentionally denied, restricted or abridged C.A.'s

37

use of and access to  DCPS educational services, programs, and benefits and benefits on account of her disability.

91. Defendants violated the D. C. Human Rights Act, DC Code § 2-1402.41, by intentionally discriminating against Plaintiff on the basis of her disability and by denying her access to educational services and benefits on discriminatory grounds.

92. Defendant Phelps's  practice or policy of ignoring her Subordinates' violations of C.A.'s rights had the effect or consequence of violating those rights, and constitutes an unlawful discriminatory practice prohibited under D.C. Code 2-1402.68.

## SEVENTH CAUSE OF ACTION

### Violation of D.C. Human Rights Act Prohibition of Discrimination by A D.C. Agency or Office

93. Plaintiffs incorporate and re-allege Paragraphs 1-92.

94. C.A. is a person with a disability.

95. DCPS is an agency or office of D.C. government.

96. Defendants intentionally limited or refused to provide to her DCPS services, programs or benefits on the basis of her disability.

97. Defendants violated the D.C. Human Rights Act, DC Code § 2-1402.73 by limiting or refusing to provide services, programs or benefits to Plaintiff on the basis of her disability.

98. Defendant Phelps's practice or policy of ignoring her

38

## SECOND CAUSE OF ACTION
### Appeal of Hearing Officer's Determination
### Pursuant to 20 U.S.C. § 1415 (i)(2)(A)

68. Plaintiffs incorporate and re-allege Paragraphs 1-67.

69. Plaintiffs are aggrieved by the findings and decisions of the impartial hearing officer.

## THIRD CAUSE OF ACTION
### Violation of ADA Title II

70. Plaintiffs incorporate and re-allege Paragraphs 1-69.

71. DCPS receives federal funds, offers, and is required by federal law to offer, educational programs and services for individuals with disabilities as well as for individuals who are not disabled.

72. DCPS offers, and is required by federal law to offer, a program of residential educational services to students with disabilities who have been determined to require those services in order to learn.

73. C.A. is a qualified individual with a disability, who is qualified to participate in and receive the benefits of DCPS educational services, including DCPS residential programs and services that are offered by DCPS through private residential educational institutions.

74. Defendants, solely by reason of her disability, intentionally excluded C.A. from participation in, and denied her the benefits of, DCPS programs and services, in willful violation of her ADA rights.

75. Defendants, knowing that their actions were substantially likely to harm C.A.'s  federally protected rights to participate in , or

subordinate's violations of C.A.'s rights had the effect or consequence of violating those rights, and is an unlawful discriminatory practice under by D.C. Code . § 2-1402.68.

## SEVENTH CAUSE OF ACTION
### Aiding and Abetting Discrimination, in Violation of DC Human Rights Act

99. Plaintiffs incorporate and re-allege Paragraphs 1-98.

100. C.A. is a person with a disability.

101. DCPS is an educational institution and an agency or office of D.C. government.

102. Defendants limited or refused to provide to her DCPS services, programs or benefits on the basis of her disability, in violation of DC Code §§ 2-1402.41 and 2-1402.73.

103. Defendants each aided and abetted, invited, or coerced or attempted to aide, abet, invite or coerce an act forbidden by the D.C. Human Rights Act.

104. Defendants violated DC Code §§ 2-1402.62, prohibiting any person from aiding, abetting, inviting, compelling or coercing any act forbidden by the HRA or attempting to do so.

## EIGHTS CAUSE OF ACTION
### Retaliation and Interference, in Violation of Title II of the ADA, Section 504 of the Rehabilitation Act and the D.C. Human Rights Act

105. Plaintiffs incorporate and re-allege Paragraphs 1-104.

106. C.A. is a qualified person with a disability, the exercise of whose rights of access to DCPS services and programs is protected by Title II of the ADA, Section 504 of the Rehabilitation Act, and the D.C. Human Rights Act.

107. Ms. Alston has aided and encouraged C.A. in the exercise and enjoyment of C.A.'s rights, as a child with disabilities, to participate in DCPS educational services, programs and benefits, by among other things, attending IEP Team meetings, filing due process complaints and court actions to obtain the services that C.A. requires and is entitled to under those disabilities statutes.

108. Ms. Alston's right to participate in IEP Team meetings, file due process and judicial complaints in pursuit of benefits for C.A. is protected by Title II of the ADA, Section 504 of the Rehabilitation Act and the D.C. Human Rights Act.

109. Defendants have retaliated against Ms. Alston and interfered with her exercise of her right to participate in IEP Team meetings, her exercise of her due process rights, her right of access to administrative and judicial proceedings, and her interest in, and enjoyment of, the decisions reached in those forums for the purpose of depriving C.A. of the benefits, services and programs that Ms. Alston obtained for C.A. through those forums.

1010. Defendants have violated, *inter alia*, 42. U.S.C. §12203 and

D.C. Code § 2-1402.61(a).

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court enter judgment for Plaintiffs and grant them the following relief:

1) Issue permanent injunctive and declaratory relief;

2) Reverse the Hearing Officer's Determination of January 18, 2007, and explicitly declare that Woods Services shall constitute her "then current educational placement" in the event of any future litigation between the parties, and order that C.A.'s eligibility for special Education services be extended for an additional nine months;

3) Award Plaintiffs exemplary and compensatory damages, to compensate them for the injuries that they have suffered;

4) Award Plaintiffs punitive damages, to deter Defendants from as against the individual Defendants;

5). Award Plaintiffs their reasonable attorney's fees and expenses;

6) Provide such other and further relief as the Court considers just and reasonable.

## JURY DEMAND

Plaintiffs demand a jury trial for all issues so triable.

Dated: March 22, 2007

41

Respectfully submitted,

Karen D. Alvarez
D.C. Bar No. 423186
1442 Foxhall Rd, N.W.
Washington, D.C. 20007
(202) 333-8553
202-333-1546(Fax)

L
07 0682
RMU

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

### I (a) PLAINTIFFS

Chanda Alston

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE (NTP)

### DEFENDANTS

District of Columbia, et al.,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Case: 1:07-cv-00682
Assigned To : Urbina, Ricardo M.
Assign. Date : 04/17/2007
Description: Alston v. District of Columbia, et al.,

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZ... FOR PLAI...

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

X
NLY!

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

0

| □ **G.** *Habeas Corpus/ 2255* | □ **H.** *Employment Discrimination* | □ **I.** *FOIA/PRIVACY ACT* | □ **J.** *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| □ **K.** *Labor/ERISA (non-employment)* | ☑ **L.** *Other Civil Rights (non-employment)* | □ **M.** *Contract* | □ **N.** *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>☒ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☑ 1 Original Proceeding    □ 2 Removed from State Court    □ 3 Remanded from Appellate Court    □ 4 Reinstated or Reopened    □ 5 Transferred from another district (specify)    □ Multi district Litigation    □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

42 USC 12101

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS    □ ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint    **JURY DEMAND:** ☑ YES    □ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☑ YES    □ NO    If yes, please complete related case form.

DATE    SIGNATURE OF ATTORNEY OF RECORD    N/A

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.