UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

CHANDA ALSTON, et al.,            :
                                  :
        PLAINTIFFS,               :
                                  :   Civ. Action No. 07-682 (RMU)
    v.                            :
                                  :
DISTRICT OF COLUMBIA, et al.,     :
                                  :
        DEFENDANTS.               :
_____

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS CLAIMS**

**INTRODUCTION AND BACKGROUND**

On April 17, 2007, Plaintiffs filed a complaint against the District of Columbia, Clifford Janey, in his official capacity as Superintendent, Judith Smith, in her personal capacity, Paula Perelman, in her personal capacity, Deborah Council,[1] in her personal capacity, Ruth Blake, in her personal capacity, Mary Lee Phelps, in her personal capacity, Breona Harrison, in her personal capacity, Erika Gray,[2] in her personal capacity, and Arthur Fields, in his personal capacity. The complaint asserted jurisdiction pursuant to 42 U.S.C. §1983; Section 504 of the Rehabilitation Act, 29 U.S.C. §794; the Americans with Disabilities Act, 42 U.S.C. §12133; the "stay put" provision of the Individuals with

---

[1] Plaintiffs have named Deborah Council as a defendant in this action. Defendants believe Plaintiff intended to sue Deirdre Council, who has accepted service of the Complaint.

[2] Ms. Gray was never served a copy of the Complaint and is no longer a part of this action.

1

Disabilities Education Improvement Act of 2004, 20 U.S.C. §1415(j); and the District of Columbia Human Rights Act, D.C.Code §2-1403.16.  *See Complaint, pp. 1-7.*

Defendants filed a "Motion to Dismiss Claims against Defendants Sued in their Personal Capacity, §1983 Claims, §504 Claims and Claims Filed pursuant to the Americans with Disabilities Act" ("Motion") on December 19, 2007.  In their motion, Defendants argued that (1) the American's with Disabilities Act, 42 U.S.C. §12132, ("ADA"), prohibits liability claims against individuals; (2) the Complaint did not contain allegations with respect to specific elements of a Section 1983 violation; (3) the Complaint does not allege specific fact with respect to a claim pursuant to the Section 504 of the Rehabilitation Act, 29 U.S.C. §794 ("Section 504"); (4) there is no provision in the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §1400 et seq., ("IDEIA"), that allows an action against individuals in their personal capacity; and (5) claims against the individuals filed pursuant to the D.C. Human Rights Act, D.C. Code §2-1401.01 ("DCHRA"), are superfluous.

On January 15, 2008, Plaintiffs filed an "Opposition to Defendants' Motion to Dismiss" ("Opposition") arguing that (1) individuals are liable under the ADA; (2) Plaintiffs stated a cause for relief under Section 1983; (3) individuals are personally liable and Plaintiffs stated a sufficient cause for relief under Section 504;  and (4) the DCHRA claims should not be dismissed.

## **ARGUMENT**

As a preliminary matter, it should be emphasized that Plaintiffs have conceded two of Defendants' bases for dismissal.  First, Plaintiffs did not respond to Defendants' argument that there is no provision in the IDEIA that allows claims to be filed against

individual employees of a school agency. Second, Plaintiffs have not countered Defendants' argument that there can be no finding of liability under Section 1983 based on an IDEIA violation because Plaintiffs' Complaint does not include elements of the four-part test established in Walker v. District of Columbia, 157 F. Supp. 2d 11 (D.D.C. 2001).

Accordingly, those arguments must be treated as conceded, and any claims against the individuals named as defendants in this action—to the extent the claims are based upon the IDEIA and Section 1983—must be dismissed.

> It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.

Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F.Supp.2d 174, 178 (D.D.C. 2002).

I. **ADA and Section 504 Claims**

Defendants believe that case law supports its position that the ADA prohibits liability claims against individuals. Nevertheless, even if the Court accepts Plaintiffs' general position that individuals are liable pursuant to the ADA, Plaintiffs' claims against the individually named defendants, and the claims against the District of Columbia, to the extent they are based upon the ADA and Section 504 of the Rehabilitation Act ("Section 504"), must be dismissed because Plaintiffs' Complaint does not include the elements required to sustain a retaliation claim under the ADA or Section 504.

To establish a prima facie case of retaliation pursuant to the ADA and Section 504, a plaintiff must show that (1) she engaged in a protected activity; (2) that she suffered an adverse action; and (3) that there was a causal link between the adverse action

3

and the protected activity.  Mayers v. Laborers' Health & Safety Fund of North America, 478 F.3d 364, 369, (C.A.D.C. 2007).  See also Taylor v. Small, 350 F.3d. 1286 (C.A.D.C. 2003). In this case, Plaintiffs have not suffered an adverse action.

Despite the length of Plaintiffs' 42-page Complaint, Plaintiffs' retaliation claim may be narrowed to one basic contention—the District of Columbia Public Schools ("DCPS") "retaliated" against Plaintiffs by not promptly placing C.A. in a residential facility after the Grafton School closed.  *Complaint, pp. 22-29, 37-39.*

As this Court is well aware from its handling of Alston v. District of Columbia, Civ. No. 06-0836 (D.C. May 5, 2006), C.A.'s significant disabilities render her difficult to place.  DCPS initially sent residential referral packets to six schools and C.A. was rejected by five of those schools.  After receiving the five rejections, DCPS sent residential referral packets to four additional schools.  Id., ECF document 19, pp. 1-2, attached as Exhibit A.  C.A. was ultimately placed at the Woods Residential Treatment Center in Pennsylvania on November 28, 2006.  Id., ECF document 24, attached as Exhibit B.

C.A.'s placement delay was due to the severity of her disabilities, not because DCPS "retaliated" against her.  Moreover, C.A. was placed in a residential facility that was *selected by Plaintiffs*.  C.A. did not suffer an adverse action from DCPS—an element required to establish a prima facie case pursuant to ADA and Section 504.  Accordingly, all claims against the individually named defendants and the District of Columbia, to the extent they are based upon the ADA (Plaintiffs' "Third Cause of Action, Violation of ADA Title II," Complaint, pp. 35-36) and Section 504 (Plaintiffs' Fifth Cause of Action, Violation of Section 504," Complaint, p. 37) must be dismissed.

**II. Section 1983 Claims**

Plaintiffs' Section 1983 claims seek to enforce rights pursuant to the IDEIA, the ADA and Section 504 of the Rehabilitation Act. Plaintiffs' Opposition did not address Defendants' position that there can be no finding of liability under Section 1983 based on an IDEIA violation. Consequently, this argument has been conceded, and Plaintiffs' "First Cause of Action, Deprivation of Plaintiffs' IDEIA Rights in Violation of Section 1983" (Complaint, pp. 34) must be dismissed.

Defendants have established that Plaintiffs' Complaint does not set out a prima facie case for retaliation under the ADA or Section 504. Therefore, Section 1983 may not be used to enforce an ADA violation or a Section 504 violation, and Plaintiffs' "Fourth Cause of Action, Deprivation of ADA Rights in Violation of Section 1983" (Complaint, pp. 36-37), must also be dismissed.

**III. Claims Based upon the District of Columbia Human Rights Act ("DCHRA")**

In their Motion, Defendants argued that since the alleged discriminatory actions described by Plaintiffs in the Complaint were acts committed when the seven Defendants were acting in their official capacities as employees of DCPS, the acts may be deemed as stating a claim against the District of Columbia, and not against the individual Defendants. Defendants cited Giardino v. District of Columbia, 505 F.Supp.2d 117 (D.D.C. 2007) in support of this position, and Plaintiffs offered no case law to counter this argument in their Opposition. For that reason, the DCHRA claims against the individually named Defendants should be dismissed. In addition, claims against the District of Columbia for violating the DCHRA must also be dismissed because Plaintiffs have not sufficiently described a cause of action in the Complaint.

5

The Complaint claims that Defendants "intentionally discriminated against C.A. because of her disability" and "denied, restricted, limited or abridged C.A.'s access to services." *Complaint, pp. 37-39.* Nevertheless, the Complaint also states that Defendants voluntarily placed C.A. in a public school program for the mentally retarded at Kramer Middle School in 2003 (Complaint, p. 16), convened meetings in May and June, 2006, to determine a new placement for C.A. after the Grafton School closed (Complaint, p. 22), and issued referral packet to schools in an attempt to place C.A. (Complaint, p. 25). Clearly, Defendants were not intentionally denying or restricting services to C.A.

At bottom, Plaintiffs' claims of DCHRA violations appear to stem from Plaintiffs' disagreement with Defendants' educational placement choices, rather that from any "intentional discrimination" against C.A. Plaintiffs' Complaint contains no factual basis to substantiate DCHRA violations. Accordingly, Plaintiffs' "Sixth Cause of Action, Violation of D.C. Human Rights Act Prohibition of Discrimination by an Educational Institution," "Seventh Cause of Action, Violation of D.C. Human Rights Act Prohibition of Discrimination by a D.C. Agency or Office," "Seventh Cause of Action, Aiding and Abetting Discrimination, in Violation of D.C. Human Rights Act,"[3] and "Eighth Cause of Action, Retaliation and Interference, in Violation of Title II of the ADA, Section 504 of the Rehabilitation Act and the D.C. Human Rights Act," must be dismissed.

## CONCLUSION

Plaintiffs' Complaint does not contain a factual basis to sustain claims of violations of the ADA, Section 504, and the DCHRA. Since there are no viable ADA

---

[3] Plaintiffs' Complaint contains two "Seventh Causes of Action."

6

and Section 504 claims, the Section 1983 claims, which were included to enforce the ADA and Section 504 claims, must also be dismissed. The only viable claim remaining before this Court is Plaintiffs' "Second Cause of Action, Appeal of Hearing Officer's Determination Pursuant to 20 U.S.C. §1415(i)(2)(A)."[4] Accordingly, Defendants' Motion must be granted, and Plaintiffs' Complaint, to the extent based upon the ADA, Section 504, Section 1983, and the DCHRA must be dismissed.

                                            Respectfully submitted,

                                            PETER J. NICKELS
                                            Interim Attorney General for the
                                               District of Columbia

                                            GEORGE C. VALENTINE
                                            Deputy Attorney General
                                            Civil Litigation Division

                                            */s/ Edward P. Taptich*_____
                                            EDWARD P. TAPTICH (012914)
                                            Section Chief
                                            Equity Section Two

                                            */s/ Veronica A. Porter*_____
                                            VERONICA A. PORTER (412273)
                                            Assistant Attorney General
                                            Civil Litigation Division
                                            Equity Section Two
                                            441 Fourth Street, N.W., Sixth Floor South
                                            Washington, D.C.  20001
                                            (202) 724-6651 (phone)
                                            (202) 727-3625 (facsimile)
                                            veronica2.porter@dc.gov

**February 8, 2008**

---

[4] Plaintiffs are appealing a January 18, 2007 Hearing Officer's Determination.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHANDA ALSTON, et al., : | |
| Plaintiffs, : | |
| v. : | Civ. Action No. 06-0836(RMU) |
| DISTRICT OF COLUMBIA, et al., : | |
| Defendants. : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' SHOW CAUSE MOTION**

Defendants, through counsel, respectfully oppose "Plaintiffs' Contempt Motion" filed herein September 7, 2006 ("Motion").

**FACTUAL BACKGROUND**

On July 17, 2006, this Court issued an Order that Defendants place plaintiff C.A. in a residential placement facility on or before Monday, August 7, 2006. On August 3, 2006, Defendants filed a "Motion to Modify the Court's July 17, 2006 Order" because, although Defendants had submitted residential referral packets to four schools by July 21, 2006, none of the schools had rendered a decision regarding C.A.'s acceptance, and in all probability would not reach a decision by August 7, 2006—the Court-ordered placement date. Plaintiffs filed an opposition to Defendants motion to modify on August 14, 2006, and Defendants replied to that opposition on August 21, 2006.

In Defendants' reply, the Court was updated on the status of C.A.'s residential referral packets. The Court was informed that DCPS had submitted residential referral packets to six schools, and all but one had denied admittance to C.A. After receiving rejections from five

schools, DCPS submitted residential referral packets to four additional schools. DCPS has informed the undersigned that the current status of those remaining applications is as follows:

The Brown Center cannot accept C.A. because of her age. Woods Services and the National Children's Center have requested additional evaluations and other documents before continuing with the admissions process. *See Exhibit A*. Benedictine School and the Pines Treatment Center informed DCPS orally that they need an updated psychological evaluation before continuing with the admissions process.

In light of these requests for additional evaluations, Defendants forwarded an Evaluation Consent form to Plaintiffs' counsel, Karen Alvarez, to be signed by Ms. Alston. *See Exhibit B*. Once DCPS receives the signed Evaluation Consent form, the evaluations will be conducted and the results will be forwarded to the four schools.

Pending placement at a residential treatment facility, C.A. was to continue attending the Cabin John School, her Court Ordered stay put placement. Undersigned counsel informed Ms. Alvarez that DCPS could not transport C.A. until the mother agreed to her placement there. *See Plaintiffs' Motion, Exhibit D*. Although not clearly stated in the email, what undersigned counsel meant by that statement was that the mother had to sign Montgomery County's "Determination of Residency and Tuition Status." Undersigned counsel clarified this confusion in a subsequent email (*see Exhibit C),* and provided a copy of the form to Ms. Alvarez. *See Exhibit B*.

Unfortunately, DCPS has been informed by Cabin John that despite C.A.'s previous attendance at the school, and that DCPS will continue to pay her tuition at the school, Cabin John will not admit C.A. because she is not a Maryland resident. Cabin John has stated that they do not have enough room for their own (Maryland residents) special education children. Defendants have relayed this information to Plaintiffs.

2

Defendants have suggested that C.A. attend Spingarn's special education program pending placement in a residential treatment facility. Defendants are also willing to place C.A. in a private day school of Plaintiffs' choosing located in the District of Columbia, pending placement in a residential treatment facility.

Plaintiffs' Motion requests that Defendants be held in contempt of this Court's July 17, 2006, Order because Defendants did not place C.A. in a residential treatment facility by August 7, 2006, and because Defendants allegedly denied Plaintiffs' transportation request.

## ARGUMENT

### A. The Applicable Legal Standards.

While this Court has the inherent authority to enforce its orders through the exercise of contempt powers, Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991), two elements must be established before a party may be held in civil contempt. First, the Court must have issued an order that is clear and reasonably specific. Armstrong v. Exec. Off. of the Pres., 303 U.S.App.D.C. 107, 1 F.3d 1274, 1289 (1993). See also, e.g., Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991) ("civil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous"). Second, the party as to which contempt is sought must have violated the Court's order. Armstrong v. Exec. Off. of the Pres., supra, 1 F.3d at 1289.

The burden of proof in civil contempt proceedings rests on the moving party. Food Lion, Inc. v. United Food and Commercial Workers Int'l Union, 322 U.S.App.D.C. 301, 103 F.3d 1007, 1016 (1997). The movant must prove the two elements of civil contempt – the existence of a clear and reasonably specific order, and a violation of the Court's order – by clear and convincing evidence. Id. See also Washington-Baltimore Newspaper Guild, Local 35 v.

3

Washington Post Co., 200 U.S. App. D.C. 165, 626 F.2d 1029, 1031 (D.C. Cir. 1980) (the asserted violation must be proved by "clear and convincing" evidence).

At this preliminary stage, the ultimate question of contempt is not before the Court; the question here is whether the Court should issue the requested show cause order. And while the Plaintiffs are not now "required to show by clear and convincing evidence that the defendant[s] should be held in contempt, . . . the Court must have some indication that sufficient evidence exists that the Court might find evidence sufficient to hold defendant[s] in contempt." Stewart v. O'Neill, 225 F.Supp.2d 6, 10 (D.D.C. 2002).

In fact, as shown below, Plaintiffs have shown nothing on the basis of which the Court could reach such a conclusion.

## B. **Defendants have made every attempt to comply with the Court's Order.**

To date, Defendants have submitted residential referral requests to *ten* schools. Six of the schools have rejected C.A. The four remaining schools will not proceed with the application process until they receive updated evaluations from DCPS. Once DCPS receives the signed Evaluation Consent form from Plaintiffs, the evaluations will be conducted.

Defendants were initially told by Cabin John that the school could not admit C.A. until they received the signed Residency and Tuition form from the student's mother. Cabin John has now informed DCPS that C.A. cannot attend the school because she is not a Maryland resident. Because of Cabin John's position on C.A.'s admittance, Defendants are unable to comply with the Court's stay put provision imposed in Laster v. District of Columbia, Civ. No. 05-1875, (D.D.C. September 28, 2005), Memorandum Opinion at p. 8.

No contempt finding is permitted where a contemnor shows that he substantially complied with a court order *or if he demonstrates his inability to comply with the terms of the*

4

*court order*.  Chairs v. Morgan County, 143 F.3d. 432, 436 (11th Cir. 1998); NAACP, Jefferson County Branch v. Brock, 619 F.Supp. 846, 849 (D.D.C. 1985); Food Lion v. United Food & Commercial Workers Union, 103 F.3d 1007, 1017 (D.C.Cir. 1997).  Defendants are unable to comply with the Court's stay put Order because Cabin John will no longer accept C.A.

### CONCLUSION

As discussed above, Defendants have made every effort to comply with the Court's Order.  Defendants cannot place C.A. in a residential treatment facility until she is accepted into such a facility.  Accordingly, Plaintiffs' Motion must be denied.

                              Respectfully submitted,

                              ROBERT J. SPAGNOLETTI
                              Attorney General, D.C.

                              GEORGE C. VALENTINE
                              Deputy Attorney General
                              Civil Litigation Division

                              */s/ Edward P. Taptich*_____
                              EDWARD P. TAPTICH (012914)
                              Chief, Equity Section 2

                              /s/ *Veronica A. Porter*_____
                              VERONICA A. PORTER (412273)
                              Assistant Attorney General
                              441 4th St., N.W., Sixth Floor South
                              Washington, D.C. 20001
                              (202) 724-6651

**September 18, 2006**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHANDA ALSTON, et al., | : | |
| Plaintiffs, | : | |
| v. | : | Civ. Action No. 06-0836(RMU) |
| DISTRICT OF COLUMBIA, et al., | : | |
| Defendants. | : | |

## **ORDER**

Upon consideration of Plaintiffs' Contempt Motion, and Defendant's Opposition thereto, it is this _____ day of September, 2006,

**ORDERED** that Plaintiffs' Contempt Motion is **DENIED.**

_____
UNITED STATES DISTRICT JUDGE

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHANDA ALSTON, et al., :
:
Plaintiffs, :
:
v. : Civ. Action No. 06-0836(RMU)
:
DISTRICT OF COLUMBIA, et al., :
:
Defendants. :

## JOINT STATUS REPORT

Defendant District of Columbia, through counsel, submits this joint status report pursuant to the Court's March 6, 2007 minute order.

On November 28, 2006, The District of Columbia Public Schools ("DCPS") placed C.A. at The Woods Residential Treatment Center in Pennsylvania. During the week of March 12, 2007, DCPS contacted the school to get an update on C.A.'s placement.

Pamela Zehner, Program Specialist at Woods and C.A.'s primary case manager, informed DCPS that although C.A. has had one incident since she began attending Woods, she has made progress. Ms. Zehner also reports that C.A. may need additional services, and a request has been made to add speech and language services to C.A.'s program.

Woods also informed DCPS that the school has received the tuition payments for C.A. as required.

On January 8, 2007, the last of two hearings on Plaintiffs' Due Process Complaint was convened by the DCPS Student Hearing Office. The Impartial Hearing Officer issued his

2

Hearing Officer's Determination ("HOD") on January 18, 2007. Plaintiffs will appeal the HOD. Plaintiffs anticipate that they will file their appeal this week.

        Respectfully submitted,

        LINDA SINGER
        Acting Attorney General, for the
        District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        */s/ Edward P. Taptich*_____
        EDWARD P. TAPTICH (012914)
        Chief, Equity Section 2

        /s/ *Veronica A. Porter*_____
        VERONICA A. PORTER (412273)
        Assistant Attorney General
        441 4th St., N.W., Sixth Floor South
        Washington, D.C. 20001
        (202) 724-6651
        **ATTORNEYS FOR DEFENDANT**

        */s/ Karen D. Alvarez*_____
        KAREN D. ALVAREZ (423186)
        1442 Foxhall Road, N.W.
        Washington, D.C. 20007
        (202) 333-8553
        **ATTORNEY FOR PLAINTIFFS**

**March 19, 2007**