## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHANDA ALSTON *et al.*,                          :
                                                 :
                    Plaintiffs,                  :        Civil Action No.:        07-0682 (RMU)
                                                 :
                    v.                           :        Document No.:             34
                                                 :
DISTRICT OF COLUMBIA *et al.*,                   :
                                                 :
                    Defendants.                  :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' PARTIAL MOTION TO DISMISS

## I.  INTRODUCTION

Before the court is the defendants' partial motion to dismiss.  The plaintiffs in this case

are a student with disabilities, C.A., and her mother.[1]  They allege that the District of Columbia

("the District"), its Superintendent of Schools, Clifford Janey,[2] and seven current and former

officials of the District of Columbia Public Schools ("DCPS") denied C.A. a free appropriate

---

[1]     For clarity, the court refers to the mother as "the plaintiff" and to the student as C.A.

[2]     On June 12, 2007, D.C. Mayor Adrian Fenty assumed control of DCPS, fired Janey, eliminated the position of Superintendent and named Michelle Rhee as the Chancellor of Schools—the newly created top position in DCPS.  *Fenty to Oust Janey Today*, WASH. POST, June 12, 2007, at A1.  Federal Rule of Civil Procedure 25(d)(1) provides for the automatic substitution of a public official's successor in an official capacity suit.  As Rhee now occupies a different position from the one Janey held, the application of this rule is unclear.  The parties, despite having six months to consider it before filing their motions, make no mention of this issue and do not ask that the court specifically dismiss claims against Janey.  *See* Defs.' Mot.  While the court is not prepared to dismiss the claims against Janey, suffice it to say, because the District does not enjoy sovereign immunity or Eleventh Amendment protection, any remedies available from a suit against Janey are also available in a suit against the District.  *See Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) (holding that official capacity suits for damages under § 1983 are equivalent to suits against the municipality).

public education ("FAPE")[3] and in so doing discriminated and retaliated against her because of her disabilities.  Because the anti-discrimination provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794, as well as the entirety of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, do not allow for individual capacity suits, the court dismisses the claims against the individual defendants based on those statutes.  Because the plaintiff has not alleged a custom or policy of denying disabled students their educational rights, and because other federal statutes provide comprehensive remedial schemes, the court dismisses the claims against the District and the individual defendants brought under 28 U.S.C. § 1983.  The court denies all other parts of the defendants' motion.

## II.  BACKGROUND

### A.  Factual Background

C.A. is now at least fifteen years old and brings this suit through her mother, Chanda Alston.  *See* Compl. ¶ 1.  The following facts are as alleged by the plaintiff in her complaint. C.A. has multiple disabilities that impair her ability to learn and has been on an Individualized Education Program ("IEP")[4] since 1998.  *Id.* ¶¶ 1, 14.  From 1998 to 2001, C.A. attended the Kennedy-Krieger School in Baltimore without incident.  *See id.* ¶¶ 17-18.  In September 2001, a

---

[3]     The Individuals with Disabilities Education Act ("IDEA") requires that schools provide each eligible child with a free, appropriate public education ("FAPE").  *See* 20 U.S.C. § 1400(d)(1).  A FAPE is "special education and related services . . . provided at public expense . . . in conformity with the [student's] individualized education program."  *Id.* § 1401(9).

[4]     An IEP "sets forth the child's educational level, performance, [and] goals," and "is the governing document for all educational decisions concerning the child."  *Bd. of Educ. v. Ill. State Bd. of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996).  It is determined by an IEP team, which consists of regular and special education teachers, the student's parents, and appropriate school and district officials.  *See* 20 U.S.C. § 1414(d).

2

DCPS Hearing Officer[5] decided that C.A. should be placed in a residential program[6] where she would live and receive care and services at the same facility. *Id.* ¶ 18. C.A.'s placement during the 2001-02 school year is unclear. *See id.* ¶¶ 18-20. In 2002, her IEP team placed C.A. at the Grafton School, a private facility in Rockville, Maryland. *Id.* ¶ 20.

Near the end of the 2002-03 school year, her IEP team decided to add a day instructional program at Cabin John Middle School in Montgomery County where she would receive more specialized educational services. *Id.* ¶ 21. That is, she was to continue to reside at the Grafton School but would attend specialized instruction at Cabin John during the day. *See id.* In the summer of 2003, instead of paying Montgomery County for C.A.'s additional special education services, the defendants "issued a notice of placement, changing [C.A.'s] disability classification, and placing her in a D.C. public school program for the mentally retarded at Kramer MS." *Id.* ¶ 22. But, in August 2003, a Hearing Officer upheld the IEP team's addition of the day program, as the plaintiff requested, and held that the defendants had submitted fabricated documents and lied in the Due Process Hearing in an effort to undermine the IEP team's decision. *Id.* ¶ 23. Although they continued to pay for C.A.'s placement at Grafton, the defendants failed to pay Montgomery County for the day program until the spring of 2005, so C.A. did not attend Cabin John MS during the 2003-04 school year and most of the 2004-05 school year. *Id.* ¶ 24. In the summer of 2005, the defendants again refused to authorize payment for the Cabin John

---

[5]     A Hearing Officer is an impartial adjudicator of special education disputes between parents and school districts. 20 U.S.C. § 1415(f)(3)(a).

[6]     In contrast, students assigned to a day program receive educational services during school hours.

placement for the upcoming school year, and this court ordered "stay put" relief[7] in September of that year so that C.A. could attend Cabin John in addition to Grafton while a Due Process Hearing took place. *Id.* ¶¶ 26-30. In November 2005, the Hearing Officer upheld C.A.'s placement at Grafton and Cabin John. *Id.* ¶ 33.

At the end of 2005, Grafton School announced that it would be closing its Rockville campus. *Id.* ¶ 35. The campus closed in mid-February of 2006. *Id.* ¶ 38. Shortly before the school closed, C.A. suffered hallucinations. *Id.* ¶ 37. With the closure of Grafton, C.A. lost "the residential structure that psychological and psychiatric evaluators had found [she] required" and her condition worsened to the point that she was hospitalized in March in the psychiatric ward of Children's Hospital. *Id.* ¶¶ 36, 39. By May, the defendants had not made any arrangements to place C.A. at another residential facility, and the plaintiff filed another Due Process Complaint and another suit asking this court for injunctive relief requiring the defendants to place C.A. in another residential facility immediately. *Id.* ¶¶ 41, 43. While the case was pending, the defendants held two dispute resolution meetings and again proposed the public school program for mentally retarded students at Kramer Middle School, which the plaintiff turned down. *Id.* ¶ 42. In July 2006, this court granted stay put relief and ordered the defendants to place C.A. by August of that year. *Id.* ¶ 44.

---

[7]     The IDEA provides that a student should remain in his or her "then current educational placement" while a due process complaint, administrative hearing or civil action is pending. 20 U.S.C. § 1415(j). If a school district attempts to change the student's placement while such an action is pending, a parent may ask a court to order that the child "stay put." *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984).

In response to this ruling, the defendants submitted her application to "only a handful of schools" and failed to include the appropriate evaluations with some of those applications.[8]  *Id.* ¶ 45.  After DCPS failed to place C.A. by the August 7 deadline, the plaintiff herself sent an application to The Woods, a residential facility in Pennsylvania, which agreed in late October to accept C.A., pending payment authorization by DCPS.  *Id.*  C.A. finally enrolled at The Woods on November 28, 2006.  *See id.* ¶ 52.

To settle the plaintiff's May 2006 Due Process Complaint, the District held hearings in July 2006 and January 2007.  *Id.*  In July, the Hearing Officer held that he was not able to order "interim educational services" for C.A.  *Id.*  In January, he held that although the District had not followed her IEP from February to November of 2006, it had not denied C.A. a FAPE.  *Id.*  He also denied the requests for "compensatory services."  *Id.*

## B.  Procedural History

The plaintiff filed her complaint on April 17, 2007.  She alleges at least nine causes of action under the ADA, 42 U.S.C. §§ 12131 *et seq.*; the IDEA, 20 U.S.C. §§ 1400 *et seq.*; the Rehabilitation Act, 29 U.S.C. § 794; and the D.C. Human Rights Act ("DCHRA"), D.C. CODE § 2-1402.  Compl. ¶¶ 65-110.  She seeks injunctive and declaratory relief, exemplary and compensatory damages, punitive damages, attorney's fees and a reversal of the Hearing Officer's January 2007 decision.  *Id.* at 41.  The defendants moved for partial dismissal on December 19,

---

[8]    DCPS does not operate special education residential facilities, so students requiring those services must attend private schools at DCPS's expense.  D.C. PUB. SCHS., OFFICE OF SPECIAL EDUCATION PROGRAMS: PROGRAM DESCRIPTIONS (2007), http://www.k12.dc.us/offices/ose/programdescriptions.html.  Before a student may enroll in a private school, she must be accepted, and because it is the school district's responsibility to provide the FAPE, it is its responsibility to secure the student's admission.  *See A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 679 (4th Cir. 2007).  Parents who have the means may unilaterally place their children in private facilities pending the school district's (or a court's) approval and be reimbursed for that expense.  *Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 369 (1985).  Parents who cannot afford that option must wait for the school district to authorize payment before the child enrolls in the private school.  *See id.* at 370.

2007.  The plaintiff filed an opposition on January 15, 2008, and the defendants filed a reply on

February 8, 2008.  The court now turns to the defendants' motion.

### III.  ANALYSIS

#### A.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v.

Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain

statement of the claim, giving the defendant fair notice of the claim and the grounds upon which

it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing

FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Such simplified notice

pleading is made possible by the liberal opportunity for discovery and the other pre-trial

procedures established by the Rules to disclose more precisely the basis of both claim and

defense to define more narrowly the disputed facts and issues."  *Conley*, 355 U.S. at 47-48

(internal quotation marks omitted).  It is not necessary for the plaintiff to plead all elements of

his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14

(2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211

F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege "any set of facts consistent with the allegations."  *Bell Atl.

Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (abrogating the oft-quoted language from

*Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it

appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief");

*Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 2008 WL 1932768, at *5 n.4 (D.C.

Cir. Apr. 29, 2008) (affirming that "a complaint needs *some* information about the circumstances

giving rise to the claims"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Id.* at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

## B. The Court Dismisses the Claims Against the Individual Defendants Under the IDEA

The defendants argue that personal capacity suits are not allowed under the IDEA.[9] Defs.' Mot. at 9. The plaintiff does not respond to this argument. *See* Pls.' Opp'n; Defs.' Reply at 2-3. Accordingly, the court may treat this argument as conceded. *See Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997). Even if the court were not to treat the point as conceded, the defendants are correct that such an action is not permissible, *Bradley v. Ark. Dep't of Educ.*, 301 F.3d 952, 956-57 (8th Cir. 2002) (dismissing individual capacity claims seeking compensatory and punitive damages under the IDEA). The court therefore grants the

---

[9]    The defendants also assert that this and other claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1). Defs.' Mot. at 1. As the ADA, IDEA, § 1983 and § 504 claims are all based on federal statutes, this court has subject matter jurisdiction over these claims as well as supplemental claims arising from the same facts. *See* 28 U.S.C. § 1331 (allowing that "district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (allowing pendant state claims that arise from a "common nucleus of operative facts" with the federal law claims).

defendant's motion and dismisses all claims under the IDEA against the defendants in their individual capacities.

### C. The Court Grants in Part the Defendant's Motion to Dismiss the ADA Discrimination Claims

#### 1. Individuals Are Not Personally Liable for Discrimination Under the ADA

The defendants claim that the "ADA prohibits liability claims against individuals," Defs.' Mot. at 5, and that the plaintiff failed to plead the elements of an ADA discrimination claim, Defs.' Reply at 3-4. The plaintiff insists that individuals are liable under the retaliation provisions of the ADA.[10] Pls.' Opp'n at 1-2. Although the plaintiff does not respond to the defendants' arguments regarding the discrimination claim and the court may treat this point as conceded, *Twelve John Does*, 117 F.3d at 577, the court nevertheless analyzes this claim under the appropriate law, *Smith v. Mallick*, 514 F.3d 48, 51 (D.C. Cir. 2008) (holding that courts have an independent obligation to apply the correct law regardless of the parties' arguments).

Title II[11] of the ADA, by its terms, only prohibits discrimination by "public entities." 42 U.S.C. § 12132. The statute is clear that individuals are not public entities. *Id.* at § 12131(1). Therefore, individuals, acting in their personal capacities, cannot violate Title II. *E.g.*, *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (prohibiting personal capacity suits under the discrimination provisions of the ADA and the Rehabilitation Act). To the extent that the plaintiff's claims against the individual defendants in their personal capacities are based on Title II, the court dismisses them.

---

[10]    For clarity, the court addresses the retaliation claims in Section E.

[11]    The ADA has four Titles that each regulate a different aspect of discrimination against individuals with disabilities. Title I prohibits discrimination in employment. 42 U.S.C. § 12112. Title II prohibits discrimination by public entities. *Id.* § 12132. Title III prohibits discrimination in public accommodations. *Id.* § 12182. Title IV contains miscellaneous prohibitions such as retaliation. *Id.* §§ 12203-10.

**2.  The Plaintiff's Allegations Against the District Are Sufficient**

The defendants also move to dismiss the plaintiff's claims against the District under the ADA, Defs.' Mot. at 1, arguing that the plaintiff fails to plead the elements of an ADA discrimination claim, Defs.' Reply at 3-4.  As the defendants only presented this argument in their reply, the plaintiff did not respond to it.  Generally, arguments raised for the first time in a reply are waived.  *Walker v. Pharm. Research & Mfg. of Am.*, 461 F. Supp. 2d 52, 58 n.9 (D.D.C. 2006); *see also In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006) (treating as waived an argument raised for the first time in a reply).  Out of an abundance of caution, however, the court analyzes this claim under the appropriate law.  *Smith*, 514 F.3d at 51.

The ADA prohibits public entities from excluding qualified individuals with disabilities from participating in or receiving the benefits of "the services, programs, or activities" of that entity.  42 U.S.C. § 12132.  As a local government, the District of Columbia is a public entity.  *Id.* at § 12131(1)(a) (defining "public entity" as "any state or local government").  Although the plaintiff need not plead all the details necessary to ultimately prevail on a claim, providing such details is sufficient to defeat a motion to dismiss.  *See Fame Jeans*, 2008 WL 1932768, at *6. The elements of an ADA discrimination claim are 1) that the plaintiff is a qualified individual with a disability; 2) that the public entity denied her the benefits of or prohibited her from participating in the entity's services, programs or activities; and 3) that denial or prohibition was "by reason of" her disability.  42 U.S.C. § 12132.

First, the plaintiff explicitly alleges that C.A. is a qualified individual with a disability under the ADA.  Compl. ¶¶ 1, 71-76.  Second, the plaintiff claims that the defendants have prevented her from participating in DCPS's Program of Indirect Services.  *Id.* ¶¶ 17-22.  Third, the plaintiff alleges that the defendants denied C.A. the benefits of an appropriate academic

placement "solely by reason of her disability." *Id.* ¶ 74.  Together, these allegations are more

than enough to state a claim upon which relief may be granted.  *See Burnett v. Sharma*, 2007 WL

1020782, at *9 (D.D.C. Mar. 30, 2007) (denying a motion to dismiss a complaint that did not

allege "specific supporting factual allegations").  Therefore, the court denies the defendants'

motion to dismiss the ADA Title II claims against the District of Columbia.

### D.  The Court Dismisses in Part the Rehabilitation Act Claims

#### 1.  Individuals Are Not Personally Liable for Discrimination Under § 504 of the Rehabilitation Act

The defendants move to dismiss the Rehabilitation Act claims against the individual

defendants, Defs.' Mot. at 1, but provide no argument on this point.  The plaintiff maintains that

individuals are liable under the Rehabilitation Act for retaliation.[12]  Pls.' Opp'n at 3.  Although

the defendants did not properly argue this issue, the court is "entitled to apply the right body of

law, whether the parties name it or not."  *Smith*, 514 F.3d at 51 (quoting *Mwani v. bin Laden*,

417 F.3d 1, 11 n.10 (D.C. Cir. 2005)).

Like Title II of the ADA, § 504 of the Rehabilitation Act only prohibits discrimination by

a "program or activity" receiving Federal funds.  29 U.S.C. § 794(a).  The definitions of

"program or activity" do not include individuals.  *Id.* at § 794(b).  Therefore, individuals, acting

in their personal capacities, cannot violate § 504.  *E.g.*, *Garcia*, 280 F.3d at 107 (prohibiting

personal capacity suits under the discrimination provisions of the ADA and the Rehabilitation

Act).  To the extent that the plaintiff's claims against the individual defendants in their personal

capacities are based on § 504, the court dismisses them.

---

[12]     For clarity, the court addresses the retaliation claims in Section E.

### 2.  The Plaintiff's Allegations Against the District Are Sufficient

The defendants first contend that the Rehabilitation Act applies only to employment discrimination and is thus "wholly irrelevant" to this case.  Defs.' Mot. at 7.  The plaintiff responds that the defendants provide programs and services, which, implicitly, are subject to the provisions of § 504.  Pls.' Opp'n at 5.  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . .  shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The statute further defines "program or activity" to include "all the operations of . . . a local educational agency."  *Id.* § 794(b)(2)(B).  By its plain language then, the statute applies to the provision of educational services by DCPS.  *See, e.g.*, *Savoy-Kelly v. E. High Sch.*, 2006 WL 1000346, at *4 (D.D.C. Apr. 14, 2006) (holding that a § 504 claim for denial of educational benefits is cognizable but dismissing the claim because the plaintiff failed to adequately allege causation).

Second, the defendants argue that the plaintiff has not shown that C.A.'s alleged exclusion from services happened "solely by reason of" her disability.  Defs.' Mot. at 7.  She replies that the complaint sets forth sufficient facts regarding causation, citing pages 50-51.  Pls.' Opp'n at 5.  To sustain a § 504 claim, a plaintiff must show that the discrimination or exclusion is caused "solely by reason of" her disability.  *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1580 (D.C. Cir. 1984) (denying liability where the hospital school discharged the student at least in part because he no longer needed medical care and in part because other students were waiting for admission).  This causation standard is higher than that required by the ADA.  *Compare* 42 U.S.C. § 12132 ("by reason of"), *with* 29 U.S.C. § 794(a) ("solely by reason of").  The plaintiff,

however, explicitly alleges that the "[d]efendants intentionally excluded C.A. from participating in and denied her the benefits of DCPS educational programs and services solely because of her disability." Compl. ¶ 85. There is no mention in the complaint of any causes other than the "extent and severity of her disabilities." *E.g.*, *id.* ¶ 51. Therefore, the facts pled provide the defendant with clear notice about the plaintiff's claims regarding causation. *See Lunceford*, 745 F.2d at 1580.

Finally, the defendants contend that the plaintiff has not pled sufficient facts to show that they acted in bad faith or with gross misjudgment rather than that they merely failed to provide a FAPE. Defs.' Mot. at 8. To this, the plaintiff retorts that the complaint alleges intentional and willful violations of C.A.'s rights, which is "more than 'bad faith.'" Pls.' Opp'n at 5. In the special education context, the D.C. Circuit requires the plaintiff to show "something more than a mere failure to provide the 'free appropriate public education' required by [the IDEA]." *Lunceford*, 745 F.2d at 1580 (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)). To show something more, the plaintiff must demonstrate "bad faith or gross misjudgment" on the part of the defendants. *R.S. v. District of Columbia*, 292 F. Supp. 2d 23, 28 (D.D.C. 2003) (dismissing the complaint where the plaintiffs only allegation was the failure to provide a FAPE and there were no insinuations of misconduct). Here, the plaintiff repeatedly alleges that the defendants acted intentionally to deny C.A. the educational benefits to which she was entitled. *E.g.*, Compl. ¶ 85. She further alleges that the defendants fabricated documents for a Due Process Hearing and lied to the Hearing Officer. *Id.* ¶¶ 23, 31. The plaintiff is not required to use the magic words "bad faith" in her pleading, and the allegations here certainly qualify as gross misjudgment, if not more. *See R.S.*, 292 F. Supp. 2d at 28.

Because the Rehabilitation Act is relevant to the special education context and the plaintiff has alleged that C.A. was denied benefits solely because of her disability and that the defendants acted in intentionally or in bad faith, she has stated a claim upon which relief may be granted. The court, therefore, denies the defendants' motion to dismiss the § 504 claim against the District.

### E.  The Court Denies the Motion to Dismiss the Plaintiff's Retaliation Claims Under the ADA and the Rehabilitation Act

The defendants request that the court dismiss all the claims pursuant to the ADA and the Rehabilitation Act, Defs.' Mot. at 1, but make no mention of the retaliation claims as separate from the discrimination claims, *see id.* at 4-5, 7-8. Although the defendants do not specifically address the retaliation claims, the court is "entitled to apply the right body of law, whether the parties name it or not." *Smith*, 514 F.3d at 51 (quoting *Mwani*, 417 F.3d at 11 n.10).

Although the text of the ADA and the Rehabilitation Act differ, courts frequently interpret them analogously. *E.g.*, *Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002) (using the same test for retaliation under both statutes). The analysis below focuses on the ADA, but it applies with equal force to the Rehabilitation Act.

### 1.  Retaliation Under the ADA and the Rehabilitation Act

The ADA prohibits any "person" from discriminating against an individual who "has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203. Similarly, although the Rehabilitation Act itself does not prohibit retaliation, it does incorporate the "remedies, procedures, and rights" of Title VI, which does. *Weber v. Cranston*, 212 F.3d 41, 48 (1st Cir. 2000). Additionally, the implementing regulations for the ADA prohibit any "private or public entity" from

discriminating against, coercing, intimidating, or threatening someone as an act of retaliation.  42 C.F.R. § 35.134.  Furthermore, "private entity" is defined as "a person or entity other than a public entity;" a "public entity" includes "any state or local government."  *Id.* § 36.104.

The D.C. Circuit has identified a three-step test for determining whether a plaintiff has stated a sufficient prima facie case for retaliation under the ADA: the plaintiff must allege that 1) she "engaged in protected activity," 2) she "was subjected to adverse action by" the defendant and 3) there is a causal connection "between the adverse action and the protected activity." *Mayers v. Laborers' Health and Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007) (quoting *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005)) (internal quotations omitted).  The same test applies under the Rehabilitation Act.  *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49-50 & n.8 (D.D.C. 2003).  Although this test was developed in the employment discrimination context, every circuit to consider the issue has applied the same or a similar test in retaliation cases regarding public programs.  *Albra v. City of Fort Lauderdale*, 232 Fed. Appx. 885, 891 (11th Cir. 2007) (applying the same test where the plaintiff claimed he was denied the benefit of police services); *Weixel*, 287 F.3d at 148-49 (applying a similar test where the plaintiff challenged her educational placement in the public schools); *Johnson v. Oklahoma*, 2000 WL 1114194, at *1 (10th Cir. Aug. 7, 2000) (applying the circuit's retaliation test from employment cases where the plaintiff alleged retaliation by the public university she attended).  Critically, even though this test presents a higher standard than that which is required to survive a motion to dismiss, *Swierkiewicz*, 534 U.S. at 511-14, a plaintiff who meets this higher standard has *a fortiori* pled enough to withstand a motion to dismiss, *see Fame Jeans*, 2008 WL 1932768, at *6.

### 2. The Plaintiff's Allegations Against the Individual Defendants Are Sufficient

#### a. Individuals Are Amenable to Suit in Their Personal Capacities for Retaliation Under the ADA and the Rehabilitation Act

The question of whether individuals can be personally liable for retaliation under the ADA and the Rehabilitation Act in the public services context has not been addressed in the D.C. Circuit. Two other circuit courts have addressed the issue and come to opposing conclusions.[13] *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 (11th Cir. 2003) (allowing personal liability); *Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999) (precluding personal liability). The Fourth Circuit relied on precedent from employment discrimination disputes that prohibit individual liability for retaliation under the ADA. *Baird*, 192 F.3d at 471 (relying on the remedies provided by the ADA "in the employment context" to preclude individual liability in the public services context). The Eleventh Circuit criticized this approach for failing to recognize that the public services context is distinct from the employment context. *Shotz*, 344 F.3d at 1174. For the reasons that follow, this court concludes the Eleventh Circuit's exhaustive analysis is more persuasive.

Initially, the plain language of the retaliation provision of the ADA indicates that individuals may be held liable for retaliation. *See* 42 U.S.C. § 12203 (prohibiting any "person" from retaliating). Indeed, § 12203 is the only section of the ADA that prohibits discrimination using "the unqualified term 'person'" rather than a more specific actor. *Shotz*, 344 F.3d at 1168. The Supreme Court has held that when Congress selects different language in one part of a statute from that used elsewhere, the choice is intentional and purposeful. *Russello v. United*

---

[13]     There is also conflicting precedent from two district courts in New York. *Compare Smith v. Univ. of the State of N.Y.*, 1997 WL 800882, at *6 (W.D.N.Y. Dec. 31, 1997) (allowing personal liability), *with Warren v. Goord*, 2006 WL 1582385, at *19 (W.D.N.Y. May 26, 2006) (precluding personal liability).

*States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 702, 722 (5th Cir. 1972)). Although the relevant provisions of the ADA provide no definition of "person," "Congress has been consistent: the meaning of a 'person' in comparable civil rights statutes has always included an individual." *Shotz*, 344 F.3d at 1168 (citing Title VII, the Age Discrimination in Employment Act, the Family and Medical Leave Act and the Fair Labor Standards Act). This is evidence that Congress similarly intended the ADA to allow retaliation suits to proceed against individuals. *See Food & Drug Admin. v. Brown & Williams Tobacco Corp.*, 529 U.S. 120, 133 (2000) (noting that the "meaning of one statute may be affected by other Acts").

This conclusion garners further support when read in context with other provisions of the Act. In the employment context,[14] courts have held that individuals are not amenable to suit under Title I of the ADA. *See id.* at 1174 & n.20 (cataloging cases). But, the applicable remedies and procedures for a retaliation claim under Title I come from Title VII of the Civil Rights Act, *see* 42 U.S.C. § 12203(c), § 12117(a), and it is well-settled that individuals are not amenable to suit under Title VII, *Gary v. Long*, 59 F.3d 1391, 1398 (D.C. Cir. 1995). Title VII and Title I of the ADA prohibit discrimination by precisely the same entities, *Albra v. Advan, Inc.*, 490 F.3d 826, 833 (11th Cir. 2007), and because Title I is such a close analog to Title VII and Congress was aware that individuals were not amenable to suit under Title VII when it enacted the ADA, courts can fairly infer that Congress intended to preclude such suits for

---

[14]    All the cases relied upon by the defendants are in the employment context and/or apply Title VII analysis. *See Baird*, 192 F.3d at 471 (relying on the remedies provided by the ADA "in the employment context" to preclude individual liability in the public services context); *Butler v. City of Prairie Village*, 172 F.3d 736, 743-44 (10th Cir. 1999) (denying individual liability in the employment context); *Mendez-Vasquez v. Tribunal General de Justicia*, 477 F. Supp. 2d 406, 413 (D.P.R. 2007) (same); *Stevenson v. Indep. Sch. Dist. No. I-038*, 393 F. Supp. 2d 1148, 1152 (W.D. Okla. 2005) (denying individual liability in a discrimination, not a retaliation, claim).

retaliation under Title I, *see id.* Title II and Title VI of the Civil Rights Act, however, are not such close analogs because Title VI only applies to funds recipients and Title II applies to all public entities.[15] *Shotz*, 344 F.3d at 1174. These differences indicate that "Congress did not intend for [courts] to rely only on the [references to Title VI] to the exclusion of the plain language" of the retaliation provision itself. *Id.* at 1175.

Even if this court were to determine that the plain language of the statute is ambiguous, the *Chevron* doctrine requires the court to give deference to agency interpretations.[16] *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984). The Department of Justice's interpretation of the retaliation provision includes "private entities," which in turn includes individuals. *Id.* at 1176-80. Likewise, the relevant regulations for the Rehabilitation Act prohibit retaliation by any "recipient or other person." 34 C.F.R. § 100.7(c).[17]

Because the ADA itself recognizes a difference between the employment and public services context by placing its prohibitions in different titles with different remedies and procedures, it is inappropriate to use analysis from the former for the latter. *Shotz*, 344 F.3d at 1174. Therefore, individuals may be sued in their personal capacities for retaliation under the ADA and the Rehabilitation Act.

---

[15]    The ADA makes the "remedies and procedures" available under Title VI of the Civil Rights Act of 1964 applicable to retaliation claims under Title II. *See* 42 U.S.C. § 12203(c), § 12133; 29 U.S.C. § 794(a). Courts have held that individuals are not personally liable under Title VI. *See Shotz*, 344 F.3d at 1173 (cataloging cases). This is because Title VI was enacted under the Spending Clause, which relies on an inherent contract between those entities receiving funds and the government. *Id.* at 1170. In contrast, the ADA was enacted under the Commerce Clause and applies to all public entities, not only those receiving federal funds. *Id.* at 1174. The limitations of the Spending Clause's inherent contract, therefore, do not apply to the ADA. *Id.*

[16]    After a comprehensive examination of the legislative history of the ADA, the Eleventh Circuit found it to be unilluminating. *Shotz*, 344 F.3d at 1177.

[17]    This regulation implements Title VI of the Civil Rights Act but is also the applicable regulation for the Rehabilitation Act. *See* 34 C.F.R. § 104.61.

**b. The Plaintiff Alleges Sufficient Facts Against the Individual Defendants**

As individuals are amenable to suit under both the ADA and the Rehabilitation Act for retaliation, the court applies the three prima facie elements to determine whether the plaintiff has alleged facts that would exceed those necessary under the general notice pleading requirements. *See Shotz*, 344 F.3d at 1180 (discussing the prima facie case in the context of a suit against individuals). First, filing a formal complaint alleging that an entity denied the plaintiff reasonable accommodations by reason of her disability is a protected activity. *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (holding that filing an EEOC complaint is a protected activity). Additionally, seeking reasonable accommodations from school officials so that a child can return to school is a protected activity. *Weixel*, 287 F.3d at 149. Here, the plaintiff alleges that she attended IEP meetings to advocate for her daughter and filed "due process complaints and court actions to obtain the services" her daughter needs. Compl. ¶ 107. In at least some of these actions, she complained that her daughter was not receiving the educational benefits of DCPS programs to which she was entitled. *Id.* ¶¶ 48-49. Also, throughout the time period in question, the plaintiff claims she was seeking reasonable accommodations for her daughter's disability. *See id.* ¶¶ 22-40. The plaintiff, therefore, alleges engagement in protected activities. *See Woodruff*, 482 F.3d at 529; *Weixel*, 287 F.3d at 149.

Under the second step, a school refusing to evaluate and place a student according to her abilities is an adverse action. *Weixel*, 287 F.3d at 149 (sustaining a retaliation claim where the plaintiff child was placed in a lower-level math class instead of the Regents class for which she was likely qualified). Similarly, the revocation of one's accommodations qualifies as an adverse action. *Woodruff*, 482 F.3d at 529. Here, the plaintiff alleges that C.A. was excluded from the appropriate educational program for the 2003-04 and 2004-05 school years and excluded from

school entirely from February 2006 to November 2006. Compl. ¶¶ 24, 53. Such exclusions are a removal of the child's educational accommodations and more severe than being placed in a lower-level math class. Consequently, they qualify as adverse actions.

Finally, a close temporal connection between the protected activity and the adverse action "can indeed support an inference of causation." *Woodruff*, 287 F.3d at 529. A continuing series of back and forth protected activities and adverse actions over a year and a half is sufficient to allege a retaliation claim. *Weixel*, 287 F.3d at 149. The plaintiff avers that she filed lawsuits in 2002 and 2005 and hearing office complaints in 2003, 2005 and 2006. Compl. ¶¶ 22-40. The adverse actions allegedly continued from 2003 through 2006. *Id.* ¶¶ 24, 53. As in *Weixel*, the plaintiff alleges a continuing series of retaliatory acts in response to a series of protected actions all regarding the proper educational placement of C.A. Therefore, the plaintiff has alleged sufficient facts so that a jury could infer a causal connection between the protected activities and the adverse actions. *See Woodruff*, 287 F.3d at 529.

Because the plaintiff has alleged facts that, if taken as true, demonstrate a series of protected activities followed by a series of adverse actions that are causally connected, she has pled a prima facie case for retaliation. *See Mayers*, 478 F.3d at 369. As such, she has stated more than what is necessary to give "notice of 'the general nature of the case and the circumstances or events upon which it is based.'" *See Fame Jeans*, 2008 WL 1932768, at *5 (quoting Charles E. Clark, *Simplified Pleading*, 2 F.R.D. 456, 457, 460 (1943)). Therefore, the court denies the defendants' motion to dismiss the retaliation claims against the individual defendants.

### 3. The Plaintiff's Allegations Against the District Are Sufficient

To begin, the District, as a local government, is a public entity and therefore subject to the ADA. *See* 42 U.S.C. § 12131(1)(a) (defining "public entity" as "any state or local government"). Because the plaintiff alleged that the District was responsible for all of the adverse actions taken, the analysis regarding the sufficiency of her claim against the individuals applies equally here. Therefore, the plaintiff has stated a claim upon which relief may be granted, and the court denies the defendants' motion to dismiss the retaliation claims against the District.

### F. The Court Denies the Defendants' Motion to Dismiss the Plaintiff's Claims Under the D.C. Human Rights Act

The defendants moved to dismiss the claims under the DCHRA against the seven defendants sued in their personal capacities. Defs.' Mot. at 1, 9. The defendants have not moved to dismiss DCHRA claims against the District or Superintendent Janey, *id.*, and those claims continue.[18] The defendants argue that the individual capacity suits should be dismissed because "the alleged discriminatory actions described by Plaintiffs in the Complaint are acts that were committed while the seven were acting in their official capacities as employees of DCPS" and

---

[18] The defendants, in one sentence in their reply, suggest that the court should also dismiss claims against the District. Defs.' Reply at 5. This, however, was not part of their motion, Defs.' Mot. at 1, and therefore, the court will not consider this argument, *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 422 F. Supp. 2d 96, 102 (D.D.C. 2006) (refusing to dismiss claims against defendants who did not move for dismissal).

therefore the suits against the individuals merge with the suit against the city.[19]  *Id.* at 9.  The

plaintiff responds that individual capacity suits are permissible under the DCHRA and only the

official capacity suits should merge.  Pls.' Opp'n at 4.

The DCHRA makes it unlawful for "an educational institution . . . to deny, restrict, or to

abridge or condition the use of, or access to, any of its facilities, services, programs, or benefits

of any program or activity to any person otherwise qualified, wholly or partially, for a

discriminatory reason, based upon . . . disability."  D.C. CODE § 2-1402.41.[20]  An educational

institution is defined as "any public or private institution including [a] . . . school system or

university; . . . and includes an agent of an educational institution."  *Id.* § 2-1401.02(8).  An

agent is "[o]ne who is authorized to act for or in the place of another; a representative."  BLACK'S

LAW DICTIONARY 68 (8th ed. 2004).  The D.C. Court of Appeals has interpreted a nearly

identical provision of the DCHRA prohibiting discrimination by employers to apply to the

plaintiff's supervisors in their individual capacities.  *Wallace v. Skadden, Arps, Slate Meagher &*

---

[19]     The defendants argue for the first time in their reply that the plaintiff failed to allege facts to support her discrimination claims.  Defs.' Reply at 6.  But arguments raised for the first time in a reply are waived.  *Walker v. Pharm. Research & Mfg. of Am.*, 461 F. Supp. 2d 52, 58 n.9 (D.D.C. 2006); *see also In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006).  Even if the court were to consider this argument, the defendants' focus is misplaced.  They argue that the plaintiff did not state a claim for intentional discrimination because she admits that the defendants "voluntarily placed C.A. in a public school program . . . at Kramer Middle School in 2003, convened meetings in May and June, 2006, to determine a new placement for C.A. . . ., and issued referral packets to schools in an attempt to place C.A."  Defs.' Reply at 6.  The plaintiff is clear, however, that the discrimination she claims lay in the defendants' failure to place C.A. in an appropriate setting, which the Kramer program was not, according to the 2003 Hearing Officer decision, Compl. ¶ 23, and in their failure to provide a prompt replacement for Grafton's closure, which was announced in December, 2005 and occurred in February, 2006, *id.* ¶¶ 35, 38.  The defendants' tardy arguments are, therefore, not responsive to the plaintiff's claims.  The court determines she has pled enough facts for her DCHRA claims to go forward.  *See MacIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223, 228 (D.D.C. 2005).

[20]     It is also an unlawful discriminatory practice to "coerce, threaten, [or] retaliate against" any individual in the enjoyment of "any right granted or protected" by the DCHRA, D.C. CODE § 2-1402.61, or to "aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under" the DCHRA, *id.* at § 2-1402.62.  The plaintiff alleged causes of action for discrimination, retaliation, and aiding and abetting.  Compl. at ¶¶ 93-110.

*Flom*, 715 A.2d 873, 888 (D.C. 1998) (holding that the definition of employer, which includes "'any person acting in the interest of such employer, directly or indirectly,' necessarily includes a partner"). Although this case only addresses the individual liability of law partners, the U.S. District Court for the District of Columbia has twice extended this holding to non-partner individual supervisors in other contexts. *See Lance v. United Mine Workers of Am. 1974 Pension Trust*, 400 F. Supp. 2d 29, 32 (D.D.C. 2005); *MacIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223, 228 (D.D.C. 2005). *MacIntosh*, written by Judge Sullivan, is particularly persuasive given that he served for years on the D.C. Court of Appeals and "is uniquely qualified to state how [that court] will interpret" the DCHRA. *Lance*, 400 F. Supp. 2d at 32 n.2.

Here, DCPS, as a school system, is an educational institution, and the defendants, who represented DCPS at meetings and hearings and by signing agreements and authorizing payments, were its agents. As such, the plaintiff may maintain a cause of action against them in their personal capacities under the DCHRA. Because such a claim is cognizable, the court denies the motion to dismiss any of the claims under the DCHRA.

### G. The Court Dismisses the § 1983 Claims

The defendants argue that the plaintiff failed "to establish that the municipality has a custom or practice that caused the alleged" violation. Defs.' Mot. at 6. The plaintiff does not respond to this argument. *See* Pls.' Opp'n. It is therefore conceded, *Twelve John Does*, 117 F.3d at 577, and the court dismisses the § 1983 claims against the District and Superintendent Janey.[21] Regarding the individual defendants, the defendants' motion seeks dismissal of these claims but presents no argument. *See* Defs.' Mot. at 1. In contrast, the plaintiff responds that individuals

---

[21]     Official capacity suits for damages under § 1983 are equivalent to suits against the municipality. *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996).

who, acting under color of state law, violate a person's rights are liable under § 1983.  Pls.'
Opp'n at 6.

The plaintiff is correct that § 1983 creates a cause of action against any person who,
acting under the color of state law, abridges rights guaranteed by the Constitution or the laws of
the United States.  *Washington v. District of Columbia*, 802 F.2d 1478, 1480 (D.C. Cir. 1986).
Relief under § 1983, however, may not be available if the statute that creates the right also
provides a comprehensive remedial scheme.  *Middlesex County Sewerage Auth. v. Nat'l Sea
Clammers Ass'n*, 453 U.S. 1, 20 (1981).  The federal courts are consistently clear that the IDEA
is such a comprehensive scheme.  *A.W. v. Jersey City Public Schs.*, 486 F.3d 791, 802 (3d Cir.
2007) (reviewing precedent from other courts and concluding the IDEA precludes § 1983 relief);
*see also Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 29 (1st Cir. 2006) (requiring that "where the
underlying claim is one for violation of the IDEA, plaintiffs may not use § 1983 . . . in an attempt
to evade the limited remedial structure of the IDEA); *Bradley v. Ark. Dept. of Educ.*, 301 F.3d
952, 957 (8th Cir. 2002) (holding that remedies not available under the IDEA may not be sought
under § 1983); *but cf. Howell v. Waterford Pub. Schs.*, 731 F. Supp. 1314, 1319 (E.D. Mich.
1990) (rejecting similar reasoning and allowing a § 504 claim to remedy an alleged failure to
provide a FAPE).  This is true even though the IDEA contains a savings clause, 20 U.S.C. §
1415(l), which provides: "Nothing in this chapter shall be construed to restrict or limit the rights,
procedures, and remedies available under the Constitution, the [ADA], [the Rehabilitation Act],
or other Federal laws protecting the rights of children with disabilities."  *A.W.*, 486 F.3d at 802
(concluding in light of the Supreme Court's decision in *City of Rancho Palos Verdes v. Abrams*,
544 U.S. 113 (2005), that § 1415(l) does not apply to § 1983 suits).  Several circuits have also
held that § 1983 may not be used to remedy violations of the ADA and § 504.  *Stevenson v.*

*Indep. Sch. Dist. No. 1*, 393 F. Supp. 2d 1148, 1151 (W.D. Okla. 2005) (cataloging cases from the Fifth, Eighth, Ninth, and Eleventh circuits); *but see Goonewardena v. New York*, 475 F. Supp. 2d 310, 330 (S.D.N.Y. 2007) (allowing such claims to go forward).

Here, the plaintiff's claims are essentially for injuries under the IDEA: the defendants' failure to place C.A. in an appropriate residential facility in a timely manner denied her a FAPE. *See* Compl. ¶¶ 61-62. The remedial scheme of the IDEA provides for appeal of the Hearing Officer's determination, injunctive relief and awards of compensatory education and attorney's fees. *See* 20 U.S.C. § 1415. Indeed, the plaintiff seeks to take advantage of these provisions. Compl. at 41. To the extent that her § 1983 claims are predicated on the ADA and § 504, the proper avenue for relief is under those statutes, and again, she has sought such relief. *Id.* ¶¶ 71-76, 84-86. Because the plaintiff has alleged no violations of federal rights for which there is not an existing, comprehensive remedial scheme, the court dismisses her § 1983 claims against the individual defendants.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss, in part, and dismisses the § 1983 claims against the District and the individual capacity suits under the IDEA, Title II of the ADA, § 504 of the Rehabilitation Act and § 1983. An order consistent with the Memorandum Opinion is separately and contemporaneously issued this 19th day of June, 2008.

RICARDO M. URBINA
United States District Judge