UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CHANDA ALSTON *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 07-0682 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 82, 84 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTION TO ALTER OR AMEND INTERLOCUTORY JUDGMENT; DENYING THE PLAINTIFFS' CROSS-MOTION TO ALTER OR AMEND INTERLOCUTORY JUDGMENT

## I. INTRODUCTION

The plaintiffs, a student with disabilities ("C.A.") and her mother, Chanda Alston, commenced this action against the District of Columbia ("the District") and various District of Columbia Public Schools ("DCPS") officials, alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794. On March 30, 2010, the court issued a ruling granting in part and denying in part the defendants' motion for summary judgment and denying the plaintiffs' cross-motion for summary judgment. The only claims to survive this ruling were the plaintiffs' ADA and Rehabilitation Act claims concerning a month-long period in the summer of 2005 during which the plaintiff was allegedly denied a free and appropriate public education ("FAPE"), as required by the IDEA.

This matter is now before the court on the parties' cross-motions to alter or amend the court's March 30, 2010 ruling. In their motion, the defendants ask the court to grant them

summary judgment on the plaintiffs' surviving claims.[1] The plaintiffs, in turn, ask the court to amend the portions of its earlier March 30, 2010 ruling granting the defendants summary judgment on the plaintiffs' claims that the defendants had violated the ADA and Rehabilitation Act by failing to provide C.A. an appropriate residential placement in 2006. Because the plaintiffs have not raised a genuine dispute of material fact as to whether C.A.'s disability was the sole or motivating factor for the denial of benefits that occurred in the summer of 2005, the court grants the defendants' motion to alter or amend and enters summary judgment for the defendants on these claims. Furthermore, because the plaintiffs have presented no persuasive evidence or argument that the court erred in granting summary judgment to the defendants on the plaintiffs' claims concerning C.A.'s 2006 residential placement, the court denies their cross-motion to alter or amend.

## II. FACTUAL & PROCEDURAL BACKGROUND

C.A. was born to Chanda Alston in 1992. Defs.' Statement of Material Facts ¶¶ 1, 2. In 1998, C.A. was identified as disabled for purposes of the IDEA and has been on an Individualized Education Plan ("IEP") since that time. *Id.* ¶ 4. Over the last thirteen years, the plaintiffs and the defendants have litigated numerous disputes surrounding C.A.'s receipt of a

---

[1] The defendants style their motion as a supplemental motion for summary judgment on the plaintiffs' ADA and Rehabilitation Act claims regarding the alleged denial of benefits in the summer of 2005. *See generally* Defs.' Supplemental Mot. for Summ. J. ("Defs.' Mot."). This court had, however, ordered the defendants to file a motion to alter or amend addressing these claims, rather than a supplemental motion for summary judgment, *see* Minute Order (June 1, 2010), as the court had previously denied summary judgment to the defendants on those claims, Mem. Op. (Mar. 30, 2010) at 20-22. The court therefore construes the defendants' motion as a motion to alter or amend an interlocutory judgment pursuant to Federal Rule of Civil Procedure 54(b). *See infra* Part III.A.

FAPE. Mem. Op. (Mar. 30, 2010) at 2-7. The court briefly recounts below the events pertinent to the motions presently before the court.[2]

Prior to the summer of 2005, C.A.'s IEP called for her placement in an instructional day program at Cabin John Middle School ("Cabin John") in Montgomery County, Maryland. *Id.* ¶ 6. The defendants, however, did not authorize payment for C.A. to attend Cabin John before the school year started on August 29, 2005. *Id.* ¶ 10. As a result, C.A. was excluded from attending classes at Cabin John at the beginning of the school year ("the Summer 2005 Exclusion"). *Id.* ¶ 9. The plaintiffs filed a due process complaint on September 13, 2005, alleging that the defendants' failure to pay for Cabin John deprived C.A. of a FAPE. *See* Mem. Op. (Mar. 30, 2010) at 4. The defendants eventually authorized payment, allowing C.A. to start classes at Cabin John on September 28, 2005.[3] Defs.' Statement of Material Facts ¶ 14. The parties ultimately settled the plaintiffs' IDEA claims, and on November 22, 2005, a hearing officer issued a hearing officer determination ("HOD") memorializing that settlement agreement.[4] *Id.* ¶ 16.

In addition to the placement at Cabin John, C.A.'s IEP called for her placement in a residential program at the Grafton School ("Grafton"), a private residential facility in Rockville, Maryland. *Id.* ¶ 5. Grafton announced in late 2005 that it would be closing, and ultimately closed its doors in February 2006. Mem. Op. (Mar. 30, 2010) at 4. Months after the closure,

---

[2] A more detailed presentation of the factual and procedural background of this case may be found in the court's memorandum opinion on the parties' cross-motions for summary judgment. *See* Mem. Op. (Mar. 30, 2010) at 2-7.

[3] This court had ordered "stay put" relief two days earlier requiring C.A. to remain at Cabin John pending a due process hearing. *See Laster v. Dist. of Columbia*, 394 F. Supp. 2d 60, 67 (D.D.C. 2005).

[4] Specifically, the District agreed to provide C.A. with 305 additional hours of academic tutoring, among other relief, to compensate C.A. for the month of classes she missed at Cabin John. Defs.' Statement of Material Facts ¶ 16.

DCPS still had not arranged for a new residential placement for C.A. ("the 2006 Exclusion"), which prompted her mother to pursue various administrative and legal remedies. *See id.* at 4-5. Ultimately, the plaintiffs applied to have C.A. enroll at Woods Services, a residential facility in Pennsylvania, and C.A. enrolled there in November 2006. *Id.* at 5.

The plaintiffs filed a complaint in this court on March 22, 2007, asserting claims against multiple individual and municipal defendants under the IDEA, the ADA, the Rehabilitation Act, the District of Columbia Human Rights Act ("DCHRA"), 42 U.S.C. § 1983 and provisions of the D.C. Code. *See generally* Compl. These claims concerned events spanning from 2001 to 2007, including the Summer 2005 Exclusion and the 2006 Exclusion. The court resolved many of these claims in rulings issued in June 2008 and March 2009. *See generally* Mem. Op. (Jun. 19, 2008); Mem. Op. (Mar. 20, 2009).

In August 2009, the defendants filed a motion for summary judgment on the plaintiffs' remaining claims. *See generally* Defs.' Mot. for Summ. J. First, the defendants argued that insofar as the plaintiffs' remaining claims were premised on events that had occurred before September 2005, those claims were barred by various procedural limitations such as res judicata and failure to exhaust administrative remedies. *See id.* at 9-13. Second, the defendants asserted that based on the evidence in the record, no reasonable jury could find for the plaintiffs on their remaining claims. *See id.* at 13-15. In their cross-motion for summary judgment, the plaintiffs argued that they were entitled to judgment as a matter of law on their discrimination and retaliation claims, brought pursuant to the ADA and the Rehabilitation Act, concerning the exclusions that C.A. had experienced from 2001 to 2006. *See* Pls.' Cross-Mot. for Summ. J. at 9-11.

On March 30, 2010, the court issued a memorandum opinion granting in part and denying in part the defendants' motion for summary judgment and denying the plaintiffs' cross-motion for summary judgment. *See generally* Mem. Op. (Mar. 30, 2010). As pertinent here, the court denied the defendants' motion for summary judgment with respect to the plaintiffs' ADA and Rehabilitation Act claims premised on the Summer 2005 Exclusion because res judicata did not bar those claims, the claims were not procedurally barred and the defendants had not addressed the merits of the claims in their motion for summary judgment. *Id.* at 20-22. The court, however, granted the defendants' motion for summary judgment and denied the plaintiffs' cross-motion for summary judgment with respect to the plaintiffs' ADA and Rehabilitation Act claims based on the 2006 Exclusion because the plaintiffs "failed to offer any evidence to substantiate these allegations" in their cross-motion or opposition, both of which were marked by an utter lack of references to the record supporting the plaintiffs' allegations. *Id.* at 25.

On May 10, 2010, the parties jointly filed a status report in which the defendants requested leave to file a supplemental motion for summary judgment on the plaintiffs' ADA and Rehabilitation Act claims premised on the Summer 2005 Exclusion and the plaintiffs requested leave to file a motion to alter the court's ruling on their ADA and Rehabilitation Act claims premised on the 2006 Exclusion. *See generally* Joint Status Report (May 10, 2010). On June 1, 2010, the court granted the parties leave to file motions to alter or amend the court's rulings on the claims that the parties identified. Minute Order (June 1, 2010). Accordingly, the defendants have filed a motion seeking summary judgment on the plaintiffs' ADA and Rehabilitation claims premised on the Summer 2005 Exclusion. *See generally* Defs.' Mot. The plaintiffs have filed a cross-motion to alter or amend in which they request that the court grant them summary

judgment on their ADA and Rehabilitation claims premised on the 2006 Exclusion. *See generally* Pls.' Cross-Mot. These motions are now ripe for adjudication.

### III. ANALYSIS

#### A. Legal Framework

##### 1. Legal Standard for Altering or Amending an Interlocutory Judgment

A district court may revise its own interlocutory decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b); *see also Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000) (citing the Advisory Committee Notes to Federal Rule of Civil Procedure 60(b)). The standard for the court's review of an interlocutory decision differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b). *Compare Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 42, 48 n.6 (D.D.C. 2001) (noting that "motions for [relief upon] reconsideration of interlocutory orders, in contrast to motions for [relief upon] reconsideration of final orders, are within the sound discretion of the trial court") *and United Mine Workers v. Pittston Co.*, 793 F. Supp. 339, 345 (D.D.C. 1992) (discussing the standard applicable to motions to grant relief upon reconsideration of an interlocutory order) *with LaRouche v. Dep't of Treasury*, 112 F. Supp. 2d 48, 51-52 (D.D.C. 2000) (analyzing the defendant's motion for relief from judgment under Rule 60(b)) *and Harvey v. Dist. of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996) (ruling on the plaintiff's motion to alter or amend judgment pursuant to Rule 59(e)). A motion pursuant to Rule 59(e), to alter or amend a judgment after its entry, is not routinely granted. *Harvey*, 949 F. Supp. at 879. The primary reasons for altering or amending a judgment pursuant to Rule 59(e)

or Rule 60(b) are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Id.*; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam); FED. R. CIV. P. 60(b); *LaRouche*, 112 F. Supp. 2d at 51-52.

By contrast, relief upon reconsideration of an interlocutory decision pursuant to Rule 54(b) is available "as justice requires." *Childers*, 197 F.R.D. at 190. "As justice requires" indicates concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citation omitted). These considerations leave a great deal of room for the court's discretion and, accordingly, the "as justice requires" standard amounts to determining "whether [relief upon] reconsideration is necessary under the relevant circumstances." *Id.* Nonetheless, the court's discretion under Rule 54(b) is limited by the law of the case doctrine and "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal citations omitted).

### 2. Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are

"material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene*, 164 F.3d at 675 (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### B. The Court Grants the Defendants' Motion to Alter or Amend

### 1. The Defendants Have Established Their Entitlement to Summary Judgment on the Plaintiffs' Discrimination Claims Premised on the Summer 2005 Exclusion

The defendants contend that the plaintiffs have failed to raise a genuine dispute of material fact as to the viability of their discrimination claims premised on the Summer 2005 Exclusion. Defs.' Mot. at 9. Specifically, the defendants assert that "[a]ll plaintiffs have shown is that DCPS failed to promptly authorize payment for C.A. to attend Cabin John," and that "C.A.'s IEP was not met for approximately one month." *Id.* at 7. Furthermore, the defendants assert that the month-long delay before the defendants authorized payment for Cabin John in the summer of 2005 "demonstrates nothing more than a breach of C.A.'s IEP." *Id.* Because this evidence cannot, as a matter of law, satisfy the causation requirements of the ADA and the Rehabilitation Act, the defendants argue, the court should revisit its earlier ruling and grant summary judgment to them on these discrimination claims. *Id.* at 6-7.

The plaintiffs counter by first asserting that the denial of a FAPE, standing alone, constitutes actionable discrimination under the ADA and the Rehabilitation Act. Pls.' Opp'n at 3-4. Thus, the plaintiffs argue, by excluding C.A. from part of her IEP for the first month of the 2006 school year, the defendants denied C.A. her FAPE and, as a result, discriminated against her in violation of the ADA and the Rehabilitation Act. *Id.* Alternatively, the plaintiffs argue that even if the denial of C.A.'s FAPE does not, in and of itself, give rise to a cause of action under the two statutes, the defendants engaged in systematic misconduct between 2002 and 2006 designed to deny C.A. her legal right to a FAPE. *Id.* at 10-11. According to the plaintiffs, this evidence raises a dispute of fact as to whether the defendants discriminated against C.A. because of her disability. *Id.* at 1.

9

The ADA provides that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). To show that the exclusion was "by reason of" his or her disability, an individual must establish that the disability "actually play[ed] a role in the . . . decision making process and [had] a determinative influence on the outcome." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (quoting *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503-04 (5th Cir. 2002)); *accord Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004); *see also Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (observing that a plaintiff must show that she "was denied the benefits of the program or was otherwise subject to discrimination *because of* her disability") (emphasis added); *Foster v. Arthur Andersen, L.L.P.*, 168 F.3d 1029, 1033 (7th Cir. 1999) (observing that the plaintiff's disability need not be the "only reason" for the denial, but must be a "substantial factor"), *abrogated on other grounds by Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957 (7th Cir. 2010); *but see Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452-55 (6th Cir. 2004) (applying a "solely by reason of" causation standard to ADA claims).

The standard of causation differs, however, under the Rehabilitation Act because "the causative link between discrimination and adverse action is significantly dissimilar." *Baird v. Rose*, 192 F.3d. 462, 469 (4th Cir. 1999); *see also McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1073-77 (11th Cir. 1996) (drawing on statutory language, legislative history and Supreme Court interpretations of similar language in Title VII cases to distinguish between claims brought under the ADA and the Rehabilitation Act). Specifically, the Rehabilitation Act states that "[n]o

otherwise qualified individual with a disability . . . shall, *solely by reason of* her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added). In light of this heightened causation standard codified in the statutory text, this Circuit has held that the Rehabilitation Act requires plaintiffs alleging discrimination in the special education context to show "something more than a mere failure to provide the [FAPE] required by [the IDEA]." *Lunceford v. Dist. of Columbia*, 745 F.2d 1577, 1580 (D.C. Cir. 1984) (quoting *Monahan v. Neb.*, 687 F.2d 1164, 1170 (8th Cir. 1982)). Rather, a plaintiff proceeding under the Rehabilitation Act must demonstrate "bad faith or gross misjudgment on the part of the governmental defendants." *Douglass v. Dist. of Columbia*, 605 F. Supp. 2d 156, 168 (D.D.C. 2009) (citation omitted); *accord Robinson v. Dist. of Columbia*, 535 F. Supp. 2d 38, 42 (D.D.C. 2008); *R.S. v. Dist. of Columbia*, 292 F. Supp. 2d 23, 28 (D.D.C. 2003) (citing *Walker v. Dist. of Columbia*, 157 F. Supp. 2d 11, 35 (D.D.C. 2001)).

The plaintiffs' first argument – that the denial of a FAPE, standing alone, establishes a violation of the ADA and the Rehabilitation Act – merits little discussion. As noted, the Circuit has squarely held that the mere denial of a FAPE cannot give rise to a Rehabilitation Act violation. *See Lunceford*, 745 F.2d at 1580; *see also Miller v. Bd. of Educ. of the Albuquerque Pub. Sch.*, 565 F.3d 1232, 1246 (10th Cir. 2009) (observing that "the IDEA and [the Rehabilitation Act] differ, and a denial [of FAPE] under the IDEA does not ineluctably establish a violation of [the Rehabilitation Act]"). Likewise, the ADA requires more than the defendant's "[m]ere awareness of a plaintiff's disability." *Foster*, 168 F.3d at 1033; *see also McNely*, 99 F.3d at 1076 (holding that "the ADA imposes liability whenever the prohibited motivation makes

11

the difference in the employer's decision, *i.e.,* when it is a 'but-for' cause"); *French v. N.Y. State Dep't of Educ.*, 2010 WL 3909163, at *12 (N.D.N.Y. Sept. 30, 2010) (dismissing the plaintiff's ADA and Rehabilitation Act claims because those claims were "substantially the same as the [plaintiff's] IDEA claim"); *J.D.P. v. Cherokee Cnty., Ga. Sch. Dist.*, 735 F. Supp. 2d 1348, 1364 (N.D. Ga. 2010) (observing that "a plaintiff asserting claims under the ADA or [the Rehabilitation Act] must show more than an IDEA violation based upon a failure to provide a FAPE" but rather, "must also demonstrate intentional discrimination or 'some *bad faith* or *gross misjudgment* by the school'" (quoting *W.C. ex rel. Sue C. v. Cobb Cnty. Sch. Dist.*, 407 F. Supp. 2d 1351, 1363-64 (N.D. Ga. 2005))). Indeed, as one Circuit has recently observed, "[w]here the essence of the claim is one stated under the IDEA for denial of FAPE, no greater remedies than those authorized under the IDEA are made available by recasting the claim as one brought under . . . the ADA." *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 19 (1st Cir. 2006). Thus, the evidence that the Summer 2005 Exclusion constituted the denial of a FAPE does not, standing alone, give rise to a violation of the ADA or Rehabilitation Act.[5]

The plaintiffs also argues that even if the mere denial of a FAPE does not give rise to an ADA or Rehabilitation Act violation, the defendants' systematic misconduct from 2002 to 2006

---

5    In their opposition and in their cross-motion, the plaintiffs fail to cite any authority for the proposition that the denial of a FAPE, standing alone, constitutes actionable discrimination under the ADA. *See generally* Pls.' Opp'n; Pls.' Mot. And although the plaintiffs have cited several cases which they claim stand for the proposition that such a denial establishes a violation of the Rehabilitation Act, *see, e.g.*, *Andrew M. v. Del. Cnty. Office of Mental Health & Mental Retardation*, 490 F.3d 337 (3d Cir. 2007); *Barbour v. Wash. Metro. Area Transit Auth.*, 2002 WL 34236909 (D.D.C. May 24, 2002), this Circuit has conclusively ruled on this matter, *see Lunceford*, 745 F.2d at 1580.

elevates the defendants' conduct to actionable discrimination.[6] The plaintiffs, however, have presented the court with no evidence indicating a nexus between C.A.'s disability and the defendants' failure to fund her placement at Cabin John in September 2005. *See Pinkerton*, 529 F.3d at 519 (noting that the plaintiff's disability must have a "determinative influence" on the deprivation). Although the plaintiffs contend that the defendants' conduct from 2002 to 2006 evidences a "consistent objective" by the defendants to remove C.A. from Cabin John, Pls.' Opp'n at 8, the plaintiffs have not explained how the existence of such a campaign would demonstrate that C.A.'s disability played any role in the Summer 2005 Exclusion, *see generally id*. At any rate, the evidence does not reasonably suggest the existence of a concerted campaign directed against C.A., but rather, shows sporadic instances of negligence[7] by different decision-makers and failures to provide C.A. a FAPE over a nearly four-year period. *See* Pls.' Opp'n at 8-9 (stating that the aforementioned exclusions took place in December 2002, April-May 2003,

---

[6] The court notes that the period of the Summer 2005 Exclusion specifically refers to the defendants' failure to authorize payment for C.A. to attend Cabin John, which ended on September 23, 2005 when the school received payment. *Laster v. Dist. of Columbia*, 394 F. Supp. 2d 60, 66 (D.D.C. 2005). In its most recent opinion in this case, the court ruled on the plaintiffs' allegations involving the defendants' conduct occurring before the Summer 2005 Exclusion, and concluded that those claims were barred based on the plaintiffs' failure to exhaust their administrative remedies and the expiration of the relevant statute of limitations. *See* Mem. Op. (Mar. 30, 2010) at 7-19.

[7] The only instance of alleged misconduct that arguably rises above mere negligence is the plaintiff's claim that DCPS official Martin Cherry forged documents and made misrepresentations to hearing officers and the court. *See* Pls.' Opp'n at 11-12. Yet the plaintiffs have offered no evidence indicating any connection between Cherry's alleged forgery and the Summer 2005 Exclusion that would indicate that the latter incident was the result of discriminatory animus. *See generally* Pls.' Opp'n. The alleged forgery occurred in the summer of 2003, more than two years before the Summer 2005 Exclusion. *See* Hearing Officer Determination (Aug. 22, 2003) at 6. Furthermore, Cherry resigned his position in September 2003 and had no involvement with the Summer 2005 Exclusion. *See* Decl. of Melissa Phillips (Sep. 7, 2005) at 2 (identifying DCPS officials Arthur Fields and Dierdre Council-Ellis as the principal officials most involved with C.A.'s case). Accordingly, this isolated incident of alleged misconduct does not raise a genuine dispute as to whether the Summer 2005 Exclusion was the result of disability discrimination.

August 2003-January 2004, December 2005, and May 2006). The plaintiffs have not explained how these isolated incidents indicate that the one-month denial of a FAPE in September 2005 constituted bad faith or gross misjudgment. *See generally id.*; *see also J.D.P.*, 735 F. Supp. 2d at 1364. In short, this evidence does not raise a genuine dispute of fact as to whether C.A.'s disability had a determinative influence on the Summer 2005 Exclusion.

Nor does this evidence raise a genuine dispute regarding the plaintiffs' discrimination claim under the Rehabilitation Act. The Rehabilitation Act's requirement that plaintiffs prove "something more" than a denial of a student's FAPE imposes an "extraordinarily high" burden on the plaintiff. *Doe v. Arlington Cnty. Sch. Bd.*, 41 F. Supp. 2d 599, 608 (E.D. Va. 1999). As discussed, the defendants' alleged misconduct between 2002 and 2006 amounts to nothing more than garden-variety IDEA violations, which do not reasonably suggest the existence of bad faith or gross misconduct and do not give rise to a viable discrimination claim under the Rehabilitation Act. *See, e.g.*, *Holmes-Ramsey v. Dist. of Columbia*, 2010 WL 4314295, at *5 (D.D.C. Nov. 2, 2010) (concluding that the District's year-long delay in evaluating a disabled student and developing an IEP "amount[ed] to garden variety IDEA violations" that did not give rise to a Rehabilitation Act violation); *Torrence v. Dist. of Columbia*, 669 F. Supp. 2d 68, 69, 72 (D.D.C. 2009) (observing that liability under the Rehabilitation Act is "attuned to programmatic failures" and concluding that a five-month delay in conducting a student's psychological evaluation "do[es] not show anything other than a possible denial of FAPE under the IDEA"); *Walker v. Dist. of Columbia*, 157 F. Supp. 2d 11, 13-14, 36 (D.D.C. 2001) (observing that "[o]nly in the rarest of cases will a plaintiff be able to prove that a school system's conduct is so persistent and egregious as to warrant such a unique remedy not otherwise provided for by the

IDEA itself," and holding that conduct including misdiagnosing a student's disability, failing to provide an IEP for several school years and failing to provide an appropriate placement for five years collectively did not meet that standard). Because the plaintiffs have only offered evidence that the defendants deprived C.A. of her FAPE, they have not raised a genuine dispute of material fact regarding their Rehabilitation Act discrimination claim premised on the Summer 2005 Exclusion.

In sum, the defendants have demonstrated the absence of a genuine dispute of material fact with respect to the plaintiffs' ADA and Rehabilitation Act discrimination claims premised on the Summer 2005 Exclusion. In light of the absence of a genuine dispute of material fact as to the claims at issue, the court concludes that amending the portion of its earlier ruling denying the defendants summary judgment on these claims is both necessary and appropriate under the relevant circumstances. *See Cobell*, 224 F.R.D. at 272. The court therefore grants the defendants' motion to amend the relevant portion of its earlier ruling and grants summary judgment to the defendants on the plaintiffs' ADA and Rehabilitation Act discrimination claims premised on the Summer 2005 Exclusion.

**2. The Defendants Have Established Their Entitlement to Summary Judgment on the Plaintiffs' Retaliation Claims Premised on the Summer 2005 Exclusion**

The defendants also contend that they are entitled to summary judgment on the plaintiffs' retaliation claims concerning the Summer 2005 Exclusion because the plaintiffs have offered no evidence of a causal connection between the Summer 2005 Exclusion and the plaintiffs' involvement in any protected activity. Defs.' Mot. at 8. The defendants assert that the last protected activity that the plaintiffs engaged in prior to the Summer 2005 Exclusion was a due process hearing in August 2003. *Id.* Because the time span between this protected activity and

the Summer 2005 Exclusion is too great to give rise to an inference of causation, and in the absence of any other evidence of causal connection, the defendants argue that the court should grant summary judgment to them on the plaintiffs' retaliation claims. *Id.* The plaintiffs respond by citing protected activities, such as the filing of due process complaints and participation in due process hearings, in which they engaged in September 2005 and early 2006, which allegedly led to the Summer 2005 Exclusion. Pls.' Opp'n at 12-14.

"To make out a prima facie case of retaliation, an ADA plaintiff must show first, that she 'engaged in protected activity'; second, that she 'was subjected to adverse action by the employer'; and third, that 'there existed a causal link between the adverse action and the protected activity.'" *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007) (citing *Smith v. Dist. of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005)). Likewise, "[t]o establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) the employer was aware of the activity; (3) the plaintiff suffered an adverse . . . action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Duncan v. Wash. Metro. Area Transit Auth.*, 2003 U.S. Dist. LEXIS 9157, at *22-23 (D.D.C. Mar. 29, 2003); *cf. Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010) (observing that the standard for retaliation claims under the ADA and the Rehabilitation Act is the same).

As a threshold matter, the court concurs with the plaintiffs that filing due process complaints, writing letters requesting action by the District and participating in due process hearings qualify as protected activities under the ADA and the Rehabilitation Act. *See Corrales*

*v. Moreno Valley Unified Sch. Dist.*, 2010 WL 2384599, at *5 (C.D. Cal. Jun. 10, 2010) (noting that "protected activity must go beyond merely assisting special education students," but instead, requires "affirmative action in advocating for, or protesting discrimination related to, unlawful conduct by others" (quoting *Reinhardt*, 595 F.3d at 1132)); *Reinhardt*, 595 F.3d at 1132-33 (observing that "advocacy" on behalf of students and lodging complaints constitute protected activity under the ADA and the Rehabilitation Act); *Montanye v. Wissahickon Sch. Dist.*, 218 F. App'x 126, 131 (3rd Cir. 2007) (noting that "mere assistance" to disabled students is not protected activity). The court also concurs with the plaintiffs that the Summer 2005 Exclusion itself constituted an adverse action as required to establish a viable retaliation claim. *See Corrales*, 2010 WL 2384599, at *6; *Reinhardt*, 595 F.3d at 1132-3.

Yet none of the protected activities cited by the plaintiffs occurred with sufficient temporal proximity to the Summer 2005 Exclusion to support an inference of causation. The Summer 2005 Exclusion lasted from August 29, 2005 – when C.A. was unable to begin school at Cabin John because DCPS had not authorized payment – to September 28, 2005 – when DCPS finally authorized payment and C.A. began school. *See* Defs.' Statement of Material Facts ¶¶ 10, 14. The two-year gap between the 2003 due process hearing and the Summer 2005 Exclusion is too great to suggest a causal link. *See, e.g.*, *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760-61 (3d Cir. 2004) (holding that a two-month gap between an employee's request for accommodation and his termination was too long to establish an ADA retaliation claim); *Jasmantas v. Subaru-Isuzu Auto, Inc.*, 139 F.3d 1155, 1157 (7th Cir. 1998) (holding that a four-month gap between the time an employee filed an EEOC claim and her termination did not establish causation for an ADA retaliation claim). The other instances of protected activity cited

by the plaintiffs occurred *after* the Summer 2005 Exclusion and plainly do not support an inference of causation. *See* Pls.' Opp'n at 12-13 (identifying that the plaintiff engaged in protected activities by filing a due process complaint on September 13, 2005 and writing letters on March 9, 2006 and April 5, 2006 requesting a residential placement for C.A.). In the absence of any other evidence supporting a reasonable inference of causation between the plaintiffs' protected activity and the Summer 2005 Exclusion, the court grants summary judgment to the defendants on the plaintiffs' retaliation claims under the ADA and the Rehabilitation Act based on the Summer 2005 Exclusion.

### C. The Plaintiffs Have Not Established That They Are Entitled to Summary Judgment on Their Discrimination Claims Premised on the 2006 Exclusion

In their cross-motion to alter or amend, the plaintiffs assert that the court erred in granting summary judgment to the defendants on their discrimination claims premised on the 2006 Exclusion.[8] Pls.' Cross-Mot. at 20. The plaintiffs contend that in their motion for summary judgment and supporting statement of material facts, the defendants "admitted" facts that revealed their bad faith or gross misjudgment with respect to the 2006 Exclusion. *Id.* at 10-12. The plaintiffs argue that these facts indicate that: the defendants failed to implement C.A.'s IEP; the defendants repeatedly violated the orders of hearing officers and this court; and the defendants attempted to provide educational services to C.A. that various authorities had previously "deemed inadequate." *Id.* at 12-13. Therefore, the plaintiffs argue that the court should amend its previous denial of summary judgment and grant summary judgment to the plaintiffs with respect to the discrimination claims premised on the 2006 Exclusion. *Id.* at 20.

---

[8] In its March 30, 2010 memorandum opinion, the court also granted summary judgment to the defendants on the plaintiffs' 2006 claims arising under the anti-retaliation provisions of the ADA and the Rehabilitation Act. *See* Mem. Op. (Mar. 30, 2010) at 27-30. The plaintiffs have not challenged this portion of the court's ruling in their cross-motion to alter or amend. *See generally* Pls.' Mot. to Alter or Amend ("Pls.' Mot.").

The defendants respond that "none of the purported 'admissions' listed by plaintiffs can be properly attributed to [the defendants]" because they are "mischaracterizations of defendants' statements regarding findings from other proceeding[s]." Defs.' Opp'n. at 3. In addition, the defendants argue that those admissions "at best establish a breach of C.A.'s IEP," which is insufficient to show that the defendants violated the anti-discrimination provisions of the ADA or the Rehabilitation Act. *Id.* Accordingly, the defendants assert that the court should not disturb this portion of its March 30, 2010 ruling. *Id.* at 5.

The record is clear that C.A.'s IEP required that she be provided a residential placement in addition to an instructional day program. *See* Pls.' Mot. at 11; Dep. of Dierdre Council-Ellis (Apr. 28, 2009) at 93. The defendants, however, left C.A. without a residential placement between February 14, 2006 – when Grafton closed – and November 23, 2006 – when C.A. enrolled at Woods Services. Mem. Op. (Mar. 30, 2010) at 4-5. These facts demonstrate that the District denied C.A. her FAPE during the 2006 Exclusion. *See Torrence*, 669 F. Supp. 2d at 72 (determining that failure to meet a student's IEP also denies the student a FAPE).

As previously discussed, however, the mere denial of a FAPE does not, standing alone, constitute actionable discrimination under the ADA or the Rehabilitation Act. *See supra* Part III.B.1. Rather, to survive summary judgment, the plaintiffs must offer evidence from which a reasonable juror could conclude either that C.A.'s disability played a determining role in the defendants' actions or the defendants' actions amounted to bad faith or gross misjudgment.

As with their discrimination claims premised on the Summer 2005 Exclusion, the plaintiffs' attempt to bolster their discrimination claims concerning the 2006 Exclusion with other incidents of alleged misconduct by the defendants – namely, the defendants' alleged failure

19

to comply with an HOD issued in August 2003 that ordered the District to fund C.A.'s residential placement and rejected Kramer Middle School as a suitable placement for C.A. Pls.' Cross-Mot. at 11-13. Again, however, these incidents amount to little more than denials of C.A.'s right to a FAPE and do not suggest that C.A.'s disability had a determinative influence on the denial of services at issue as necessary to establish an ADA violation. *See Pinkerton*, 529 F.3d at 519. Nor do these incidents raise a genuine dispute of fact as to whether the plaintiffs can meet the "extraordinarily high burden" of demonstrating bad faith or gross misjudgment, as they must to succeed on their Rehabilitation Act claims. *See Doe*, 41 F. Supp. 2d at 608; *Douglass*, *v.* 605 F. Supp. 2d at 168. Accordingly, the court denies the plaintiffs' motion to alter the portion of its March 30, 2010 ruling granting summary judgment to the defendants on these claims.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to alter or amend and denies the plaintiffs' cross-motion to alter or amend. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 21st day of March, 2011.

RICARDO M. URBINA
United States District Judge